Saunders *v.* City & Suburban Railroad Co.

Saunders *v.* City & Suburban Railroad Co.

(*Jackson.*     June 3, 1897.)

1. NEGLIGENCE. *Not chargeable to driver of buggy crossing street railway track, when.*

Negligence is not chargeable to one driving a buggy in attempting to cross an electric railway track in front of an approaching car, where the crossing could safely be made if the motorman exercised ordinary care and had reasonable control of the car, unless the lack of such control and care was apparent to the former at the time. (*Post, pp., 134, 135.*)

Case cited and approved: Citizens, etc., Co. *v.* Seigrist, 96 Tenn., 121.

2. SAME. *Duty of driver at crossing defined.*

One driving in a buggy is not bound, at his peril, to "know" before attempting to cross an electric railway track in front of an approaching car, that a collision will not occur, but is only required to make such observation and acquire such information as would convince a reasonably prudent man, in a similar situation, that the passage could be made in safety. (*Post, p. 135.*)

3. SAME. *Effect of contributory negligence defined.*

The rule which applies in actions against steam railroad companies for injuries resulting from noncompliance with statutory precautions to avoid accidents, that plaintiff's contributory negligence, however gross and proximate, will not bar his action, but only mitigate his damages, does not apply in a common law action against an electric railway company for injuries caused by collision at a crossing. (*Post, pp. 135, 136.*)

Cases cited: Railway Cos. *v.* Foster, 88 Tenn., 672; Patton *v.* Railway Co., 89 Tenn., 370; Railway Co. *v.* Hull, 88 Tenn., 35; Railway Co. *v.* Aiken, 89 Tenn., 249; Railway Co. *v.* Pugh, 97 Tenn., 624.

4. EVIDENCE. *Opinion of witness inadmissible, when.*

Evidence that the daughter of plaintiff, in an action for personal injuries by collision with an electric street car, stated, soon

Saunders *v.* City & Suburban Railroad Co.

after the accident, that it was her father's "fault," is inadmissible as original evidence against plaintiff. (*Post, pp. 136–139.*)

5. SAME. *Witness' statement cannot be contradicted, when.*

A statement by the daughter of plaintiff, in an action for personal injuries received by collision with an electric car, made soon after its occurrence, that it was her father's "fault," being inadmissible as original evidence, cannot be made the basis for impeaching the daughter as a witness, on her denial that she made such statement. Witness' answer is conclusive as to such collateral matter. (*Post, pp. 139–143.*)

Cases cited and approved: 65 Pa. St., 63; 20 Tex. App., 473; 9 Gray, 247; 15 S. W. R., 725; 18 Barb., 420.

6. SAME. *What are collateral matters. General rule.*

An approved test of the question whether or not a fact inquired of on cross-examination is collateral, and the witness' answer, therefore, conclusive and open to contradiction. is this: Would the cross-examining party be entitled to prove the fact as a part of, and as tending to establish, his case? If he would be allowed to do so, the matter is not collateral; but, if he would not be allowed to do so, it is collateral. Collateral matters, in this sense, are such as " afford no reasonable inference as to the principal matter in dispute." (*Post, p. 141.*)

Cases cited and approved: 65 Pa. St., 63; 15 Tex. App., 202; 9 Gray, 247.

7. SAME. *Deposition taken by opposite party may be read after close of his evidence.*

A deposition taken by defendant, and used by it on the first trial, may be offered in evidence by plaintiff on a second trial, after defendant has closed its evidence without offering the same. And plaintiff's reasonable expectation that it would again be offered by defendant is a sufficient excuse for failing to read it as evidence in chief. (*Post, pp. 143, 144.*)

Cases cited and approved: Brandon *v.* Mullenix, 11 Heis., 446; Elliott *v.* Shultz, 10 Hum., 234; Richmond *v.* Richmond, 10 Yer., 343.

## FROM SHELBY.

Appeal in error from Circuit Court of Shelby County.    L. H. ESTES, J.

Saunders *v.* City & Suburban Railroad Co.

MORGAN & McFARLAND for Saunders.

TURLEY & WRIGHT for Company.

CALDWELL, J. Dr. D. D. Saunders brought this action against the City & Suburban Railroad Co., to recover $20,000 as damages for personal injuries averred to have been inflicted upon him by its wrongful and negligent conduct in operating one of its cars at a high and dangerous rate of speed, and suddenly running upon him while endeavoring to cross its track at the intersection of two streets. The defendant pleaded not guilty and contributory negligence. Verdict and judgment were for the defendant, and the plaintiff has appealed in error from the action of the trial Judge in overruling his motion for a new trial.

The defendant is a street railroad company, doing business in the city of Memphis, and propelling its cars by means of electricity. A portion of its line lies upon McLemore Avenue, which runs east and west, and intersects Mississippi Avenue and Orleans Street at right angles, they being parallel and five hundred yards apart. Owing to bad repair elsewhere, the travel for other vehicles on McLemore Avenue, at the time of the accident in question, was on the south side of the track from Orleans Street to Mississippi Avenue, and on the north side from the latter eastward, so that persons driving along McLemore Avenue from a point west of Mississippi Avenue to a point east of it, and the reverse, were

compelled to cross the railroad track at the inter-section of McLemore and Mississippi Avenues. At this intersection, in the afternoon of September 18, 1892, one of the defendant's cars collided with the buggy of Dr. Saunders, and thereby caused the injuries for which he sues. Both the car and the buggy had traversed the distance from Orleans Street to Mississippi Avenue, and were bound still farther eastward on McLemore Avenue. The motorman did not know the destination of Dr. Saunders, but did know the necessity of his crossing the track in Mississippi Avenue, if he desired to continue his travel in the direction he was going. The buggy had a top, which obstructed the view to the rear; and in the buggy were seated Dr. Saunders, who held the reins, and his daughter, she on the side next to the track and he on the other side, which, though properly the driver's position, was the less favorable for observing any car that might be following. In the effort to cross the track at the proper intersection of the two avenues, and when all but the rear wheels of the buggy had passed over, the collision took place, and Dr. Saunders was thrown out and seriously injured.

In respect of the cause of the accident, and the blame for its consequences, there is great conflict of evidence. The plaintiff introduced testimony tending to exculpate himself and inculpate the defendant, and other testimony of an opposite tendency was presented by the defendant.

Both Dr. Saunders and the motorman "had the legal right to use that part of the public highway upon which the collision occurred; but, since they could not use it at the same moment of time, it was the duty of each to so use it as not to injure the other, or unreasonably impede the other's use. The right of neither was superior to that of the other; the duty of neither was more exacting than that of the other; their rights and their duties were equal. Both were bound to exercise reasonable care and diligence to prevent a collision, and each was allowed to assume that the other would do so, and to act accordingly. It was the duty" of Dr. Saunders "to look and listen, and to have his horse under reasonable control as he approached the crossing; and so it was the duty of the motorman to survey the highway ahead of him, and to have his car under reasonable control as he approached the crossing. Neither one, reaching the place first, would have been under any obligation to stop and wait for the other to approach and pass, but either, in that situation, would have been authorized to proceed on his way, assuming that the other, being in reasonable control of his vehicle, and otherwise in the exercise of ordinary care, as he should be, would not collide with him, and no mistake that he might have made in that rightful assumption could be charged to him as negligence, unless the lack of such control and care on the part of the other person was apparent to him at the time. 'Neither party, in such

a case, could excuse himself for going into obvious danger, if he knew it was impending." *Citizens' Rapid Transit Co.* v. *Seigrist,* 96 Tenn., 121, 122.

The trial Judge virtually so instructed the jury; but he neutralized part of that instruction and minimized the right of Dr. Saunders in another portion of the charge, wherein it was stated that it was imcumbent on him, as plaintiff, to show that he made such observation, before 'going upon the track, "as to know that no car was then in motion near enough to strike him in case he started across." The plaintiff was not bound, at his peril, "to know," before attempting to cross, that a collision would not occur. He was only required to make such observation and acquire such information as would have convinced a reasonably prudent man, in a like situation, that the passage could be made in safety.

The Court, with ample elaboration, rightly charged the jury, in effect, that any negligence on the part of the plaintiff that contributed to the injury as a proximate cause would bar his action, and that any negligence on his part that contributed to the injury as a remote cause, should be considered in mitigation of damages otherwise allowable. *Railway Co.* v. *Hull,* 88 Tenn., 35, 36; *Railway Co.* v. *Aiken,* 89 Tenn., 249, 250; *Railroad Co.* v. *Pugh,* 97 Tenn., 624; Beach Cont. Neg. (2d. Ed.), Secs. 25 and 35; 3 Elliott on Railroads, Sec. 1095; Booth on Street Railways, Sec. 378; 2 Wood's Railway Law, 1254, 1255.

The rule that the plaintiff's contributory negligence, however gross and proximate, will not bar his action, but only mitigate his damages, applies in actions against steam railroad companies for injuries resulting from noncompliance with statutory precautions for the prevention of accidents (*Railway Companies* v. *Foster,* 88 Tenn., 672; *Patton* v. *Railway Co.,* 89 Tenn., 370), and not in a common law action like this one.

The daughter of Dr. Saunders was a witness for her father. In her testimony in chief she made this statement: "When we reached Mississippi Avenue, we were just jogging along, talking, in conversation. My father started to cross the track to the left side, where the driving was better. As we turned cata-cornered across the track I heard the gong and saw a car almost simultaneously, I just had time to say 'Here's a car, don't cross!' just as the horse was on the track. I was in hopes he could pull back, and he struck the horse. Just at this time the car dashed into us."

On cross-examination she was asked if she did not, a few minutes after the accident, say to Mr. Hodges and Mr. Dunnavant, that she heard the car bell ringing, or gong sounding, and that she warned her father, but he was slightly deaf. To which she replied: "I remember saying to Mr. Hodges and Mr. Dunnavant that I did warn my father not to cross, that the horse was on the track, and that he could not pull back so it seems, and that I did tell him

not to cross. I do not remember the other." In another part of her testimony she said her father's hearing was, in fact, somewhat defective. She was finally asked, over the objection of the plaintiff, if she did not, at the same time and in the same conversation with Hodges and Dunnavant, tell them that the accident was due to her "father's fault." The Court overruled the objection, and she answered: "No, I never made that statement. I told Mr. Hodges that I asked him not to cross. I think he has gotten it a little twisted."

In due time Hodges was introduced as a witness for the defendant, and in his testimony are questions and answers as follows: "*Ques.* 26. At the time the accident occurred, and before you had left the scene of the accident, did you or not hear the daughter of the complainant make any remarks? *Ans.* I got off the car and started away, and then walked around to the back of the car, and when I got there Miss Lizzie, the daughter of the plaintiff, had just come out of the wreck. I went up to her and asked her how in the world they managed to get on the track, and she said that she heard the car bell and warned her father, but that he was slightly deaf, and it was her father's fault, if I remember right."

This answer was admitted over objection, but with instruction to the jury that it could be considered only for the purpose of showing infirmity of memory on the part of plaintiff's daughter, and as thereby affecting her credibility as a witness. That part of

the answer attributing to the plaintiff's daughter the statement that "it was her father's fault," was incompetent for any purpose, and should have been excluded altogether. If she made the statement, it was, at most, but the expression of an opinion, and that, too, about a matter concerning which her opinion was not competent evidence. It would not have been permissible for her, at the trial, to give the jury the opinion she then had about the culpability or nonculpability of her father; no more was it competent to show by her, or by others, the opinion, if any, she may have expressed on that subject at the time of the collision.

Witnesses may give their opinion upon some subjects, but upon others they are confined to a statement of facts. Those qualified to speak in reference thereto may express an opinion concerning a man's health, but it is not allowable for any witness to say that one of two adverse litigants was at fault, and the other not, in the transaction or occurrence involved. The difference is illustrated in this case. It was competent for Miss Saunders to say, from association and observation, that her father's hearing was defective, yet it would not have been permissible for her to testify that he was blamable, or that he was blameless, in relation to the collision. The legal quality of his conduct was for the decision of the jury alone, and that decision was to be made from the facts disclosed, and not from the opinion of witnesses.

What the daughter is alleged to have said concerning the blameworthiness of her father could be only the expression of an opinion on her part about the matter at large, and not the statement of a fact —a conclusion which no witness, but the jury alone, was authorized. to draw and state. Therefore, the statement on this point, attributed to her by Hodges, was inadmissible as original evidence for either side, and, being so, it could not properly be made the basis of contradiction or impeachment. And whether or not she had in fact made such a statement, expressed such an opinion or conclusion, was a question collateral to the issue, consequently, her denial was conclusive and binding on the defendant. 1 Greenl. on Evi., Secs. 449, 462; 1 Whar. on Evi., Sec. 551; Whar. on Crim. Evi. (9th Ed.), Sec. 484; 29 Am. & Eng. Enc. L., 793, 796; *Hilderburn* v. *Curran*, 65 Pa. St., 63; *Rainey* v. *State*, 20 Tex. App., 473; *Lane* v. *Bryant*, 9 Gray (Mass.), 247; *Drake* v. *State*, 15 S. W. R. (Texas), 725; *Holmes* v. *Anderson*, 18 Barb., 420.

It follows that the trial Judge was in error when he required Miss Saunders to answer whether or not she told Hodges and Dunnavant that the accident was due to her father's fault, and also when, notwithstanding her denial, he permitted Hodges to contradict her. Greenleaf says: "But it is a well-settled rule that a witness cannot be cross-examined as to any fact which is collateral and irrelevant to the issue, merely for the purpose of contradicting

him by other evidence, if he should deny it, thereby to discredit his testimony. And, if a question is put to a witness which is collateral or irrelevant to the issue, his answer cannot be contradicted by the party who asked the question, but it is conclusive against him. But it is not irrelevant to inquire of the witness whether he has not, on some former occasion, given a different account of the matter of fact to which he has already testified, in order to lay a foundation for impeaching his testimony by contradicting him. The inquiry, however, in such cases, must be confined to matters of fact only, mere opinions which the witness may have formerly expressed being inadmissible unless the case is such as to render evidence of opinions admissible and material." 1 Greenl. Evi., Sec. 449. Wharton uses this language: "A witness called by the opposing party can, it is conceded on all sides, be discredited by proving that, on a former occasion, he made a statement inconsistent with his statement on trial, provided such statement be material to the issue. But the statement which it is intended to contradict must involve facts in evidence. If confined to opinion, when opinion is not at issue, or to other irrelevant matters, the cross-examining party is bound by the answer. Thus the opinion of a servant as to whether his master was to blame in a collision, being irrelevant, evidence of the former conflicting declarations of the servant cannot be received in contradiction." 1 Wharton on Evi., Sec. 551.

An approved test of the question whether or not a fact inquired of in cross-examination is collateral, is this: Would the cross-examining party be entitled to prove that fact as a part of, and as tending to establish his case? Wharton on Cri. Evi. (9th Ed.), Sec. 484; *Hilderburn* v. *Curran*, 65 Pa. St., 63; *Hart* v. *State*, 15 Tex. App., 202; *Drake* v. *State*, 15 S. W. R. (Tex.), 725. Collateral facts are defined as "those which afford no reasonable inference as to the principal matter in dispute." 1 Greenleaf Evi., Secs. 52 and 448. Tried by this criterion and this definition, there can be no doubt that the fact about which Hodges was permitted to contradict Miss Saunders was purely collateral. The defendant was not entitled to prove, as a part of its case, that she had said "it was her father's fault," nor would the fact that she had expressed such an opinion, if proven, afford any reasonable inference as to the principal matters in dispute. The jury was impaneled to decide who was actually responsible for the collision, and not to ascertain whether or not the plaintiff's daughter had laid the responsibility at his door. What opinion she may have expressed on that subject was entirely aside from the issue, and shed no light upon it. In *Lane* v. *Bryant* the action was to recover damages for injuries sustained by the plaintiff, in a collision between his carriage and that of the defendant. The defendant's servant, who was in charge of his carriage at the time of the accident, was examined as a witness.

On cross-examination the plaintiff asked him if he did not say, immediately after the collision, and while the plaintiff was being extricated, that the plaintiff was not to blame. He answered that he did not; and, thereupon, the plaintiff was allowed, against the defendant's objection, to introduce another witness and contradict the denial of the servant. The Court held that the alleged declaration of the defendant's servant was not competent for any purpose, neither as a part of the *res gestæ* nor as foundation for contradiction, and, on the latter phase, said: "His answer to this question could not be contradicted by the plaintiff. It was irrelevant and immaterial to the issue. The opinion of the witness on the subject was incompetent. The real question was, who was actually to blame; and that was to be determined by the jury by the facts in the proof." 9 Gray (Mass.), 247.

In *Drake* v. *State*, a witness, who was a son of the accused, answered, on cross-examination by the State, that he did not say, at a certain time and place and in the presence of certain persons, that he knew his father was going to kill the deceased, and, after he had so answered, the State introduced those persons, and they testified that he did make the statement denied. On appeal, it was decided that the declaration attributed to the son was inadmissible as evidence against the father, because a matter of opinion and not of fact, and that the question propounded to the son was not competent to lay ground for his

Saunders *v.* City & Suburban Railroad Co.

impeachment, because collateral to the issue. 15 S. W. R. (Texas), 725.

A large enumeration of subjects upon which non-expert witnesses may be permitted to give an opinion, is found in the case of *Hardy* v. *Merrill.* There the Court says: "But without reference to any recognized rule or principle, all concede the admissibility of the opinions of nonprofessional men upon a great variety of unscientific questions arising every day and in every judicial inquiry. These are questions of identity, handwriting, quantity, value, weight, measure, time, distance, velocity, form, size, age, strength, heat, cold, sickness, and health; questions, also, concerning various mental and moral aspects of humanity —such as disposition and temper, anger, fear, excitement, intoxication, veracity, general character and particular phases of character—and other conditions and things, both moral and physical, too numerous to mention." 56 N. H., 227 (S. C., 22 Am. R., 449). This case is cited approvingly, and partly quoted, in 2 Jones on Evi., Sec. 368.

Broad as this list is, it does not include, and could not safely be so enlarged as to include, the subject of culpability or nonculpability of a person injured in a collision with an electric street car.

Miss Alida Nicholson, who was standing near the crossing in question, had her attention attracted to the car and buggy, observed their approach, and witnessed the collision. The defendant took her deposition, in which she stated these and other compe-

tent and material facts, and used it on a former trial of this case in the Court below; but at the last trial, the record of which alone is before this Court, the defendant closed its evidence without introducing that deposition. Thereupon, the plaintiff sought to read it as his evidence, and the trial Judge refused to permit him to do so, and, as a consequence, the deposition did not go to the jury at all. This action of the Court was erroneous. A deposition taken and filed in a case by one party, and not used by him, may be read by the other party as his own evidence, if competent. *Brandon* v. *Mullenix*, 11 Heis., 446; *Elliot* v. *Shultz*, 10 Hum., 234; *Richmond* v. *Richmond*, 10 Yer., 343; 6 Enc. Pl. & Pr., 583; 5 Am. & Eng. Enc. L., 607. The plaintiff had good reason to believe that the defendant would introduce the deposition on the pending trial, as it had done on the former one, and, being disappointed in that expectation, he had the right then to make the evidence his own, and so present it to the jury. Having asked permission to do this so soon as he discovered, or could reasonably have known, that the defendant did not intend to use the deposition, he was in time, and should have been allowed the privilege, notwithstanding the fact that he had previously closed his testimony in chief.

For the reasons indicated, the judgment will be reversed. and the case remanded for a new trial.