Railroad v. Hayes.

NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY *v.*
SAM HAYES.

*(Nashville.* December Term, 1906.)

1. **RAILROADS.** Burden rests upon injured employee to show
existence of dangerous obstruction and employer's knowledge
thereof, when.

In the suit of a railroad brakeman and switchman against his
employer, a railroad company, for personal injuries received
while switching cars by being struck by a projecting obstruc-
tion near the track, when riding on the ladder upon the side
of a car in the discharge of his duty, the burden of proof rests
on him to show not only the existence of the obstruction, but
also that the railroad company had notice thereof, or by the
exercise of ordinary care would have obtained knowledge
thereof. (*Post, pp.* 683-691, and especially 689-691.)

Cases cited and approved: Railroad v. Lindamood, 111 Tenn.,
473; Railroad v. Wagner, 33 Kan., 660.

2. **NEGLIGENCE.** Not presumed against employer in furnish-
ing appliances, from injury to employee, when.

No presumption of negligence on the part of the employer in
furnishing appliances to the employee arises from the fact of
a personal injury to the employee. (*Post, pp.* 689, 691.)

Case cited and approved: Railroad v. Lindamood, 111 Tenn.,
473.

3. **SAME.** Same. Evidence of obstruction near railroad track
not showing negligence of the railroad company, when.

Where, in the suit of a railroad brakeman and switchman against
his employer, a railroad company, for personal injuries received,
while switching cars by being struck by a projecting obstruc-
tion near the track, when riding on the ladder upon the side
of a car in the discharge of his duty, it does not appear from

the evidence when or by whom the obstructing chute was placed there, or how long it had been there, but that, under the circumstances, it could not have been there long, the evidence is insufficient as a matter of law to show negligence on the part of the defendant railroad company. (*Post, pp.* 683-691.)

4. **EMPLOYER AND EMPLOYEE.** Damages for injury resulting from employee's failure to discharge his duty are not recoverable from employer, when.

Where an injury results to an employee from his failure to discharge his duty to his employer, as where the employee undertakes with the employer to see to the safety of the premises or appliances about or with which he works, and is injured, the employee cannot recover from the employer the damages resulting from the injury. (*Post, p.* 693.)

Cases cited and approved: Railroad v. Driscoll (Ill.), 52 N. E., 921; Railroad v. Emmert, 83 Va., 640; Peppett v. Railroad, 119 Mich., 640.

5. **SAME. Same. Case in judgment.**

A railroad brakeman and switchman cannot recover damages in a suit against his employer, the railroad company, for personal injuries received while switching cars by being struck by a projecting obstruction near the track, when riding on a ladder upon the side of the car in the discharge of his duty, resulting in his failure to see the obstruction until too close to it to escape injury, where it was his duty to look out for obstructions on the track and to report them to the company's local agent, whose duty it was to see that the switching tracks were kept clear, and who had instructed the switchmen to report to him any obstructions found, as appears from the plaintiff's own testimony, because the injury resulted from the plaintiff's failure to discharge his duty by looking out for such obstruction. (*Post, pp.* 683-693.)

6. **CONTRIBUTORY NEGLIGENCE.** Proximately causing the injury prevents recovery, and it need not be the sole proximate cause. Instruction to contrary is error, when.

In a case like that shown in the foregoing headnote, the rule

Railroad v. Hayes.

is well settled that the plaintiff, whose negligence in any degree, whether great or small, proximately contributes to the injury received, is precluded from recovering damages. It is not required that his negligence shall be the sole proximate cause, nor that he be equally guilty of negligence with the defendant, to prevent his recovery of damages for the injury. A charge of court instructing the jury differently or to the contrary is reversibly erroneous. (*Post, pp.* 693-696.)

Cases cited and approved: Railroad v. Fain, 12 Lea, 39; Railroad v. Fleming, 14 Lea, 136; Saunders v. Railroad, 99 Tenn., 135; Barr v. Railroad, 105 Tenn., 547.

7. **PEREMPTORY INSTRUCTIONS.** Motion for peremptory instructions for verdict for defendant without action thereon cannot be reviewed for failure to so instruct.

Failure to give peremptory instructions to the jury to return a verdict in favor of the defendant upon his motion therefor is not reviewable, where the record shows that the motion was made but fails to show any action of the court thereon, or that it was pressed to a ruling by the court, or that the action of the court thereon was invoked. (*Post, pp.* 696, 697.)

8. **SAME. Same.** No inference that motion was overruled, from immediately giving case in general charge to jury, when.

The contention that the necessary inference is that the motion for peremptory instructions to the jury to return a verdict in favor of the defendant was overruled by the trial judge, from the fact that, immediately following this motion, he gave the case in a general charge to the jury, cannot be maintained, so as to put the trial judge in error, in the absence of affirmative action on his part. (*Post, pp.* 696, 697.)

9. **SAME.** Motion for peremptory instructions for verdict for defendant properly granted is determinative of the case.

A motion for peremptory instructions to the jury to return a verdict in favor of the defendant, when properly granted, is determinative of the case in the trial court and also in the supreme court. (*Post, p.* 697.)

FROM BEDFORD.

Appeal in error from the Circuit Court of Bedford County.—JOHN E. RICHARDSON, Judge.

CLAUDE WALLER, COOPER & COOPER and T. N. GREER, for Railroad.

WILLIAM B. BATES and CHARLES S. IVIE, for Hayes.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

The defendant in error was an employee of the plaintiff in error, and while engaged in its service in the yards of the company at Shelbyville, Tennessee, in February, 1905, received a serious injury which he alleged resulted from the negligence of his employer. In the present suit, brought by him to recover damages for this injury, he filed a declaration containing three counts; the last two of these being substantially the same as the first count. In that count it was alleged that he was a brakeman and porter of the railroad company, and that as such it was a part of his duty to assist in switching and placing the cars, as he might be directed by his superiors, on the

tracks in the yards at Shelbyville, Tennessee; that he was on a freight car, which was being switched to a point on one of the side tracks of the railroad company, for the purpose of setting the brakes, with which to stop the same at the proper point; that the company negligently and wrongfully permitted this track to become obstructed by a large timber scantling, or joist, which projected over its right of way so as to be dangerous and perilous to its operatives on its cars in motion; and that, on account of this obstruction, plaintiff was struck and injured. Upon the trial of the issue made by the plea of not guilty, there was a verdict and judgment in favor of the defendant in error for $2,500, and the case has been brought into this court by the defendant below for review.

The plaintiff below, Sam Hayes, was a brakeman, porter, and switchman on the short branch road of the Nashville, Chattanooga & St. Louis Railway Company connecting the towns of Wartrace and Shelbyville. He was a man about sixty years of age, and had been engaged in the service of the company about its yards at these two points, and in running on the trains plying between them, for 30 years before the accident occurred. At Shelbyville there are branch or spur tracks leading off on the northwest side of the main track toward what is known in the record as the "Frierson warehouse" and the "Shapard warehouse," through intervening lumber yards. These warehouses and lumber yards were at the right of the main track leading from Shelbyville to War-

trace.  Among other duties required of the plaintiff be-
low was that he should assist in the switching and plac-
ing of cars on the tracks within the Shelbyville yards.
At the time of the injury Hayes was one of the train crew
which had been directed, either by the local agent at
Shelbyville or a party acting under his authority, to
place an empty freight car  on the spur track running in
close proximity to the Shapard warehouse, for the use of
the proprietors of that house, and  also to remove from
that track a car which was then loaded.  To carry out this
order, an engine pushing the box or freight car which
was to be left on the Shapard track ran up the main
track to the switch leading into the spur or side track
running in the direction of the Shapard warehouse.  The
plaintiff below turned this switch, and the engine then
backed the car off the main track onto the side or spur
track.  As the car was passing, Hayes mounted its side,
holding to a ladder which was attached thereto, and rode
to the second switch, which was thrown by him, in order
that the engine and car attached thereto might pass on
down to the Shapard warehouse.  When he had per-
formed his duty as to this switch, as the car moved by
him he again mounted the side next the warehouse by
catching hold of this ladder, and was in this position
when he received the injury which is the basis of this
lawsuit.

The record shows that near the end of the Shapard
warehouse, which this engine and car were approaching,
there was placed what is called in the record a "chute,"

used by the proprietors of this warehouse for the unloading of brick from the cars of the railway company into or near the same. This appliance consisted of a plank, perhaps two inches thick and eight or ten inches wide, on each side of which there was fastened other pieces of lumber three or four inches in height. These side pieces were intended to prevent the brick, when passing down the incline, from running off or escaping from the chute. Extending from the corner of the warehouse was a fence, which separated the yard of the warehouse from the tracks of the company. The warehouse itself stood near to the track upon which these cars were moving. According to the weight of the testimony it would seem that, whether the cars were in motion or standing still, one in passing between them and the warehouse would have to move with caution, and according to some of the testimony in the case sideways, rather than with full face to the front. The space between the warehouse and the freight car upon this track was about nineteen inches in width. One end of the brick chute rested on the ground inside of the warehouse inclosure. From that point it passed over and lay upon the fence referred to, beyond which the upper end projected in the direction of the railroad track. It was with the end so projecting that the defendant in error came in collision as he was clinging to the ladder upon the side of the box or freight car, which was being moved to that part of the track near the warehouse where it was to be placed for loading.

Railroad v. Hayes.

While it is evident from the record that this obstruction might have been seen by the defendant in error at a point sufficiently remote therefrom to have enabled him to have put himself in a place of security, yet he did not see it until he was within ten or twelve feet of it. How long this obstruction had existed the record does not show, nor is it shown by whom the chute was placed in that position. Neither the plaintiff below nor any of his witnesses could fix the date when the last carload of brick had been unloaded at this warehouse. One of the witnesses stated in a hesitating and unsatisfactory manner that brick had been unloaded some little time before the date of this accident, possibly a week. Parties who were in charge of the warehouse testified that, according to the records kept there of freight received, the last carload of brick reached and was unloaded there in November, 1904, some four months before the day of the injury received by the plaintiff below.

As has already been stated, no witness undertook to say when this chute was placed in the position it occupied when the collision in question occurred. The two Shapards, who were engaged as employees or otherwise in this warehouse, stated that the Saturday immediately preceding this accident, which occurred on Monday, they were in that part of the premises where the chute was, and they did not notice that it was lying across the fence. One of these witnesses states in the course of his examination that he thinks it was taken by some one to him unknown from the place where it was usually kept,

"back in the yard across the brick," when it was not being used, and thrown across the fence, where it was at the time of the injury.

It is true witnesses state that about the lower end of this chute there were bricks piled, and that they were frozen. But we do not think, from this fact alone, the inference could be drawn that the chute had been in that position for any considerable length of time, inasmuch as the record shows that the weather was then cold, and "that it was sleeting and freezing," so that in a very short time after it had been so placed the brick around the lower end would be naturally covered with ice. In addition, we think it clear that this obstruction could have existed but for a short time, because the defendant in error and the other employees were passing along that track frequently, if not several times every day, and it can hardly be supposed that this obstruction could long have existed without attracting the attention of some one of these parties.

While it is true that the railroad company was under obligation to the defendant in error to exercise ordinary care to see that he was furnished a safe place in which to do his work, yet, upon a record which fails to show that any of its agents had placed the chute in its dangerous position, and whether this obstruction had existed only a few minutes, or an hour, or a day before the accident occurred, upon well-settled legal principles was the verdict of the jury authorized, or can the judgment of the court thereon be sustained? In other words, in

the absence of evidence tending to show by whom the chute was placed so as to project over or near the track, or when it was so placed, or how long it had been there, was there any material evidence of negligence upon the part of the railroad company upon which the jury could base a verdict in favor of the plaintiff below?

We think the rule to be applied in answering these questions has been recognized by this court in a number of cases, and especially in that of *Railroad* v. *Lindamood,* reported at page 462 in 111 Tenn., and at page 100 of 78 S. W. In the opinion in that case it was said that, as between the employer and employee, there is no presumption of negligence on the part of the former in furnishing appliances to the latter arising from the injury itself. Following this statement of the rule, the opinion embodies approvingly the following extract from Mr. Wood's work on the Law of Master and Servant:

"From the mere fact that an injury results to a servant from a latent defect in machinery or appliances of the business, no presumption of negligence on the master's part is raised. There must be evidence of negligence connecting him with the injury. . . . The mere fact that the machinery proves defective, and that the injury results therefrom, does not fix the master's liability. *Prima facie,* it is presumed that the master has discharged his duty to the servant, and that he was not at fault. Therefore the servant must overcome this presumption by proof of fault on the master's part, either

117 Tenn—44

by showing that he knew or ought to have known of the defects complained of. . . . The burden of proving negligence upon the part of the master is upon the servant, and he is bound to show that the injury arose from the defects known to the master, or which he would have known by the exercise of ordinary care, or that he has failed to observe precautions essential to the protection of servants, which ordinary prudence would have suggested. . . . The servant, seeking recovery for an injury, takes the burden upon himself of establishing negligence upon the part of the master and due care on his own part. And he is met by two presumptions, both of which he must overcome in order to entitle him to a recovery: The first, that the master has discharged his duty to him by providing suitable instrumentalities for his business, and in keeping them in condition; and this involves proof of something more than the mere fact that the injury resulted from a defect in the machinery. It imposes upon him the burden of showing that the master had notice of the defect, or in the exercise of that ordinary care which he is bound to observe, he would have known it. When this is established, he is met by another presumption, the force of which must be overcome by him, and that is that he assumed all usual and ordinary hazards." Sections 368 and 382.

The rule stated by this author, which measures the *quantum* of evidence which the employee must furnish in order to maintain his action for an injury received in his master's service upon the ground of actionable neg-

ligence on the latter's part, is found in the text of the following authors:   Of Mr. Bailey, in his work on Master and Servant (section 360) ; of Shearman & Redfield, in their work on Negligence (section 223) ; of Judge Thompson in his work on Negligence (volume 4, section 3601) ; of Judge Elliott, in his work on Railroads (volume 3, section 1307) ; and of Mr. Labatt, in his work on Master and Servant (volume 1, section 129).

It is evident that the rule which would require that the switchman whose duty it was to couple and uncouple the cars in the yards of a railroad company, and who, while discharging that duty, was injured by reason of a defect in the spring or appurtenances connected with the drawbar of a passenger coach, and sought to recover damages for the injury, not only to prove such defect, but also that the railroad company had notice of the defect, or that by the exercise of reasonable or ordinary care it could have obtained such notice (*Atchison, etc., R. R.* v. *Wagner,* 33 Kan., 660, 7 Pac., 204), or would impose the same burden in a case like that of *Lindamood* v. *Railroad,* supra, can equally be invoked when an employee injured, as was the defendant in error, by coming in contact with an obstruction on or near the track when riding upon one of its cars in the discharge of his duty, seeks to recover from the employer on the ground of negligence.

We think, in view of this rule of law, that the assignment of error that there is no material evidence to support this verdict is well taken; and it is sustained.   But

there is another and distinct ground upon which a re-
versal of this judgment may be safely rested; and that
is, upon his own testimony, it was a part of the duty of
the defendant in error to look out for such an obstruc-
tion as that which he encountered and reported the same
to his superior, in order to its removal. We think that
the statement of the plaintiff below in this regard when
upon the witness stand was not an inadvertence upon
his part, but that he understood this to be a part of the
service which he had contracted to render to the com-
pany. He is asked by his counsel on direct examination:
"Who had charge of the track, and whose duty was it
to see that the tracks were kept clear?" And his answer
was: "Well, it was the agent's. He always told us, if
we saw anything wrong, to come and tell him about it,
and he would have it moved." What may be somewhat
ambiguous in this answer becomes clear in his answers
to several interrogatories put to him on cross-examina-
tion. The following is a part of this cross-examination:
"Now, as you were riding down there that day, it was
part of your duty to look for obstructions on or near the
track, and to have reported them? A. Yes, sir; when
I saw it, I was right on it. Q. But, as you came down
the track that day on the side of that car, it was a part
of your duty known to you, to look out for obstructions
like this plank that struck you? A. That is right."

It is true, as urged by counsel of defendant in error,
that he was a negro, and possibly of no superior intelli-
gence, yet he is necessarily bound, as is every litigant,

by the record which he makes for himself.   After a careful examination of his testimony, we find nothing in it to modify or qualify to any degree this statement as to his duty to look out for and report the existence of such obstructions as the one in question.   This being so, we understand the law to be well settled that, where an injury results to an employee from a failure to discharge a duty which he owes to his employer, the latter cannot be called upon by him to respond in damages.

As said by Mr. Thompson, in his work on Negligence (section 4416): "An employee cannot recover damages from an employer for an injury proceeding from a defect in something for the safe condition of which the employee himself was responsible.   This rule applies where the servant himself undertakes with the master to see to the safety of the premises or appliances about which or with which he works.  .  .  ."

To the same effect is Labatt on Master and Servant, section 416.

This principle, the mere statement of which carries conviction, and which would seem to need no citation of authority in support, will be found illustrated in many reported cases, among which are the following:   *Chicago, etc., R. R. Co.* v. *Driscoll* (Ill.), 52 N. E., 921; *N. W. R. Co.* v. *Emmert,* 83 Va., 640, 3 S. E., 145; *Peppett* v. *Mich., etc., R. Co.,* 119 Mich., 640, 78 N. W., 900.

It was one of the contentions of the defendant below that the plaintiff below was guilty of negligence which proximately contributed to his injuries, and that this

precluded a recovery, even if it be that the defendant below was also guilty of negligence. In the first place, it was said, as has already been stated, that it was the duty of Hayes to observe and report to the agent of the company the existence of any obstruction to the free passage of cars and persons riding upon them in and about tracks in the yards of the company, and that in his failure, with his opportunity of discovering it, to ascertain and report the existence of the obstruction in question, he was guilty of such negligence; and, further, independent of the contractual duty of Hayes in that regard, it was contended that by the exercise of ordinary care the defendant in error could have seen this obstruction for a very considerable distance before it was reached and in time to put himself in a place of safety.

Again, on this point it was said that this spur track was placed so near the Shapard warehouse that, even without the existence of this obstruction, it was dangerous for one to ride upon the side of a car next to the warehouse; that, hanging to the ladder on that side of the car, one was put in peril of being injured by collision with the warehouse itself; and plaintiff, knowing fully these physical conditions, was guilty of gross negligence in placing himself in that position on this moving car, when the record shows that there was a ladder on the other side of the car on which he could have stood in perfect security, and from which he could have gone and discharged the duty of coupling and uncoupling these cars with perfect ease. In view of the evidence that was

Railroad v. Hayes.

submitted by the defendant in seeking to maintain one
or all of these contentions, it is insisted, and we think
properly, that the circuit judge was in error in saying
to the jury, in one of the paragraphs of his charge, that
"if the condition of this obstruction was known, or by
the use of ordinary care should have been known, to the
local agent of the railroad, and the jury found that the
permitting of such obstruction to be so placed or to re-
main was an act of negligence on the part of the railroad
company, and was the proximate cause of the injury re-
ceived by defendant in error, and that his act in climbing
upon the car on the side next to the obstruction, or his
not seeing the obstruction sooner than he did, and not
moving from the place he occupied upon the ladder, was
not such contributory negligence, and was solely the
proximate cause of the injuries inflicted, or as made
plaintiff equally negligent in proximately causing the
injuries, then and in that event the plaintiff should re-
cover."    In other words, the trial judge in this para-
graph said to the jury that, if they should find that the
railroad company was guilty of negligence in failing to
remove the obstruction that caused the injury, after its
existence was known, or by the use of ordinary care
should have been known, to the company, and that the
collision with this obstruction was the proximate cause
of the injuries received by Hayes, then he was entitled
to recover, unless his own negligence was the sole prox-
imate cause of the injury, or such as made him equally
guilty of negligence with the defendant in proximately

bringing it about. We think in both respects the circuit judge was wrong. In a case such as this the rule is well settled in this State that the plaintiff would be repelled if his negligence in any degree, whether great or small, proximately contributes to the injury received. It may not be the sole proximte cause, nor need he be equally guilty of negligence with the defendant. *Railroad* v. *Fain,* 12 Lea, 39; *Railroad* v. *Fleming,* 14 Lea, 136; *Saunders* v. *City, etc., R. R. Co.,* 99 Tenn., 135, 41 S. W.; 1031; *Barr* v. *Railroad Co.,* 105 Tenn., 547, 58 S. W., 849.

It is insisted that the trial judge was in error in failing to grant the motion made by defendant below for peremptory instructions to the jury to return a verdict in its favor. The record, however, is in no condition for this court to grant the plaintiff in error the benefit of this assignment. The motion, though made, as shown by the bill of exceptions, was not pressed by the counsel to a ruling by the circuit judge. It is contended, however, that the necessary inference is that the motion was overruled by him, from the fact that trial judge, immediately following this motion, gave the case in a general charge to the jury. However ingenious this view is, yet it cannot be maintained, so as to put the trial judge in error, in the absence of affirmative action on his part. What is here urged might be equally so in a case brought from a lower court, the consideration of which by this court depended upon the making and overruling of a motion for a new trial. In such a case, the record show-

ing this motion was made, but failing to show any action thereon, it could hardly be insisted that the errors of the court below could be corrected here. It is the duty of the litigant, who in the course of a trial objects to the introduction of testimony on the ground of incompetency, or who has been cast in the lawsuit by his adversary and moves for a new trial, to invoke the action of the lower court upon these respective motions, and, failing to do so, he will not be heard to complain in this court in any particular. *A fortiori,* this must be true with regard to a motion for peremptory instructions, which, when properly granted, is determinative of the case in the court below, and also in this court.

It follows, from what has been said, that the judgment of the lower court must be reversed, and the case remanded for a new trial.