## KING v. LEEMAN.—204 S. W. (2d) 384.

Eastern Section. June 18, 1946.

Petition for Certiorari denied by Supreme Court, January 11, 1947.

208

Asquith & Asquith and Donaldson, Montgomery & Kennerly, all of Knoxville, for plaintiff in error.

Poore, Kramer & Overton, of Knoxville, for defendant in error.

McAMIS, J. W. C. King, doing business as Local Bus Lines, appeals from a judgment for $5,000 in favor of H. E. Leeman for personal injuries sustained while riding as a passenger in a bus of the Local Bus Lines. The case was tried before the court and a jury.

On August 23, 1944, plaintiff was employed at the Clinton Engineering Works. He was boarding in Knoxville and travelled to and from his work on busses operated by the Local Bus Lines. On the day of the accident he had finished his work and was returning on defendant's bus, along with 25 or 30 other passengers, when defendant's bus collided with a larger bus operated by the Tennessee Coach Company. We infer that the collision occurred within the Clinton Engineering Works reservation.

The highway at the place of collision was a three lane highway of hard-packed gravel construction. For the purpose of stating the facts in this opinion it may be supposed that the bus on which plaintiff was riding was traveling in an easterly direction, the bus of the Tennessee Coach Company in the opposite direction or meeting defendant's bus. Testimony offered by the plaintiff shows that defendant's bus was traveling at a speed of about

35 miles per hour or 10 miles in excess of prevailing speed regulations which we assume applied to travel within the Clinton Engineering Works. Plaintiff testified that as the bus approached the point of collision the driver of defendant's bus was engaged in conversation with a passenger on the opposite side of the bus and toward the rear; that the driver's head was turned toward the passenger and away from the oncoming bus of the Tennessee Coach Company; that he, plaintiff, saw the oncoming bus "a right smart piece away" and shouted to the driver to look out for it. Other evidence shows that about the same time the driver of the Tennessee Coach Company turned from the north side of the highway to the south side for the purpose of entering a parking area to pick up passengers. When the driver of defendant's bus discovered the bus of the Tennessee Coach Company he cut to the right and ran his bus into the parking lot on the south side of the highway where it collided with the Tennessee Coach Company bus at a point some 10 or 15 feet south of the highway. The driver, as a result of the impact seems to have lost control of his bus and it proceeded some 300 feet further into the lot before it was brought to a stop. When the collision occurred plaintiff was thrown from his seat and sustained the injuries for which this suit is brought.

The driver of the Tennessee Coach Company bus testified that just before the accident he was meeting a large bull dozer traveling on the south side of the highway at a speed of about 3 miles per hour; that the operator of the bull dozer signaled him to cross the highway in front of the bull dozer; that he had stopped his bus for the purpose of making this turn and, at the signal of the operator of the bull dozer, he then turned across the highway and entered the parking lot; that about the same

time defendant's bus suddenly came from behind the bull dozer; that as soon as he saw defendant's bus he gave his full attention to trying to get off the highway in order to avoid the collision and did not see it again until the collision occurred.

The jury chose between the foregoing evidence and the testimony of defendant's driver that he was operating his bus very slowly keeping a lookout ahead; that the other bus cut sharply in front of him forcing him to cut his bus to the right and drive into the parking lot in an attempt to avoid the collision. We think the jury could say that the proximate cause of the collision was the act of defendant's driver in driving around the bull dozer at a speed of 35 miles per hour while focusing his attention upon a passenger near the rear of the bus and the verdict, being supported by material evidence and approved by the trial judge, must be affirmed unless there is some error of law in the conduct of the trial entitling defendant to a reversal.

The plaintiff filed a pauper's oath in lieu of bond and it is now insisted the trial court erred in not dismissing the suit because plaintiff was not a resident of Tennessee when the suit was instituted in August, 1945.

With certain exceptions, not here material, Code, Section 9080 authorizes the bringing of suit on the pauper's oath by "any resident of this state."

We infer from plaintiff's testimony that he is a citizen of Alabama. In August, 1944, he came to Knoxville, Tennessee, where he was living at a boarding house when injured on August 23, 1944. At that time plaintiff's wife was living in Alabama. Some two or three weeks before this suit was instituted his wife came to Knoxville and lived with him at the boarding house with the intention of finding a place to live on the Clinton Engineering

Works. Some time later they moved into a trailer and have since lived continuously in Tennessee, plaintiff having resumed his employment after leaving the hospital.

We recognize that the terms citizen and resident are sometimes used interchangeably. However, the purpose of this statute was to place poor persons on a level with the wealthy in a contest for their rights in the courts (Scott v. Brandon, 125 Tenn. 314, 143 S. W. 601) and we think it should be construed as remedial legislation and given a liberal construction to effectuate its purpose. We hold that plaintiff is a resident of Tennessee within the sense of the statute.

Two of the assignments are directed to the refusal of the Court to permit defendant to show in mitigation of the damages that plaintiff had received $2,000 from the Tennessee Coach Company for a covenant not to sue it. Learned counsel for defendant admit that the holding of the trial judge is supported by the weight of authority but insist that the rule should be changed. Plaintiff, on the other hand, insists that if the rule is to be changed it should be by action of the Legislature. It is our duty to follow the holdings of the Supreme Court and, under the holding in Nashville Interurban Railway Co. v. Gregory. 137 Tenn. 422, 193 S. W. 1053, and Smith v. Dixie Park & Amusement Co., 128 Tenn. 112, 157 S. W. 900, the action of the trial court in refusing to admit proof of the covenant not to sue was correct. See also City of Nashville v. Brown, 25 Tenn. App. 340, 157 S. W. (2d) 612, following Nashville Interurban Railway Co. v. Gregory, supra.

Another of the assignments is that the court erred in charging that if the jury found that defendant's bus was being operated at an excessive speed that would be a matter to be considered in determining whether or not the driver was guilty of negligence and erred in charging

the jury in this connection: "Gentlemen of the jury there is some evidence in this case there was a speed regulation governing the speed of vehicles on the highways at the point where this accident occurred."

It is insisted that it was error to refer to the speed regulation in the absence of proof as to who promulgated the regulation. There was no objection made to the evidence offered by plaintiff to establish the regulation, doubtless because it was a matter of general knowledge that the Clinton Engineering Works was within a Government reservation and being operated by the United States Government. The jury was not told that the violation of the regulation would constitute negligence per se and, under the circumstances, we think there was no error in the change.

■ Complaint is also made of the refusal of the court to charge a request tendered by defendant which, it is said, set forth its theory of the case concluding with the instruction that if the jury found the facts as outlined "then there would be no actionable negligence against defendant and your verdict should be for defendant." The charge, as tendered, leaves out of consideration other elements in plaintiff's case and particularly plaintiff's testimony that the driver of defendant's bus was not upon the lookout but was looking toward the rear of the bus conversing with a passenger. To have instructed the jury as requested would have been equivalent to a peremptory instruction to disbelieve plaintiff's testimony on that question. We think there was no error in refusing the request.

■ We are urged with much force and ability to reverse because the court refused to permit plaintiff to be cross-examined concerning a written statement made out of court that the driver of the other bus operated by

Tennessee Coach Company was to blame for the accident.

After the accident plaintiff signed a card on which he stated in answer to the question, Who in your opinion was to blame? "Other bus driver." The next question, as to why he was of that opinion, was answered as follows: "Did not stop to make turn." Defendant was permitted to question plaintiff as to the second question but not as to the first because the Court thought it called for the expression of an opinion from the witness and was incompetent on that ground.

We think this question is controlled by the holding of the Supreme Court in Saunders v. City & Suburban Railroad Co., 99 Tenn. 130, 41 S. W. 1031, unless, as insisted, the rule there established was overruled in the later case of Holder v. State, 119 Tenn. 178, 104 S. W. 225, 236.

In the Saunders case the plaintiff, accompanied by his daughter, was struck by a train while crossing the railroad track in a buggy. On the trial the daughter gave testimony tending to show that the Railway Company was negligent and, for the purpose of contradicting her, she was asked on cross-examination if she did not state at the time of the accident that it was her father's fault. It was held that the trial court erred in permitting the witness to be cross-examined.

By way of distinguishing the Saunders case from the holding in Holder v. State, the court said in the course of the opinion in the latter case: "The liability of the railroad company depended upon mixed questions of fact and law, that could be determined only by the court and jury, while the opinion of Miss Saunders, if competent, could be of value only as placing her in the position of the tribunal. Her opinion that her father was to blame involved the proposition that her father's negligence was the proximate cause of the accident, and necessarily in-

volved a survey of all the attending facts and a conclusion or inference therefrom. There was in her expression of opinion no implied statement of fact inconsistent with the testimony which she had given.''

It is true the opinion in Holder v. State quotes at length from Wigmore on Evidence as to what amounts to a self-contradiction and when an opinion is inconsistent but the opinion states that the Saunders case was decided well within the principles laid down in the authority cited and then referred to the Saunders case in the language quoted above. We can find from this no purpose to change the rule laid down in the Saunders case. In the Holder case the witness had testified in support of the defendant's alibi and the State sought to cross-examine the witness to show that she had stated out of court that she knew the defendant committed the murder for which he was on trial. This statement was necessarily inconsistent with her testimony. No question of law or of the effect of competing circumstances from which diverse inferences might be drawn was involved. If the alibi to which she testified was true she necessarily knew that the defendant was not guilty of the crime for which he was charged and, upon this theory, the cross-examination was permitted.

In this case, as in the Saunders case, the question about which the witness had expressed an opinion involved questions of law and fact and, moreover, the opinion does not appear to have been based upon any fact inconsistent with plaintiff's testimony as a witness as to specific facts. If plaintiff had testified that the bus did stop in making the turn, we think defendant would have been entitled to ask him if he had not stated on the card that the driver of the other bus was to blame because he did not stop to make the turn. In that event the testimony

would have been necessarily inconsistent with the statement made out of court and the rule as laid down by Wigmore and approved in Holder v. State, supra, would entitle defendant to cross-examine the witness on the statement. As the question was presented to the trial court, we think there was no error in declining to permit cross-examination and the assignment based upon this action must be overruled.

■ This brings us to the final question of the amount of the verdict. At the time of the accident plaintiff was 54 years of age and employed as utility man in the power house earning 70 cents per hour with overtime after 40 hours. After about 4 or 5 months total loss of time he was reemployed as a janitor at 65 cents per hour. His loss of income would approximate $1,000 between the date of his injury and his return to work. Medical expenses amounted to approximately $500. The physician states that he has suffered a permanent loss of 10 per cent of the use of his left leg.

His injuries, consisting of a fracture of the ileum and of the hip socket, were painful and required him to remain in bed until October 3, 1944 when he left the hospital and returned to his home in Alabama. We think the amount of the verdict is not excessive and that we would not be justified in suggesting a remittitur after it has been approved by the trial judge.

For the reasons indicated, we find the assignment without merit and it results that the judgment below must be affirmed with costs.

Hale and Burnett, JJ., concur.