CHAS. D. WINN, Respondent, v. MODERN WOODMEN OF AMERICA, Appellant.

St. Louis Court of Appeals, May 25, 1909.

1. LIFE INSURANCE: Warranties: Prima-Facie Case.    In an action on an insurance policy where the defense was that the insured had made untrue statements in his application for insurance, the evidence is examined and held sufficient to warrant a finding that such statements were true.

2. ————: Proofs of Loss: Presumptions.    In an action on a life insurance policy, an instruction requested by the defendant that the plaintiff could not recover unless the claim of the plaintiff was passed upon by the defendant's board of directors, in accordance with the provisions of policy, was properly refused, where it was shown that timely proofs of loss were submitted and a year elapsed before suit was brought; in such case it ought to be presumed that the directors had passed on the claim.

3. ————: **Evidence: Opinion of Witness.** In an action on a life insurance policy where the defense was that the insured had made untrue statements and warranties in his application for insurance, it was improper to permit a physician, testifying in the case, to state that he thought the answers to questions in such application were true; such evidence was an opinion upon the issue which the jury was to determine.

4. **EVIDENCE: Impeaching Witness: Drunkenness.** A witness cannot be impeached by showing that he was in the habit of becoming intoxicated, unless such intoxication was at the time of the events about which he testified, so as to throw light on his mental condition at that time.

5. ————: ————: **Reputation for Sobriety.** In introducing testimony to impeach a witness on the ground that his reputation for sobriety was bad, a question asking whether his reputation "for sobriety and otherwise" was bad was incompetent; the words "and otherwise" were improper.

Appeal from Monroe Circuit Court.—*Hon. David H. Eby,* Judge.

AFFIRMED.

*Benj. D. Smith* and *Tunnell & Hart* for appellant.

When a verdict can be accounted for only on the ground of ignorance, partiality, prejudice or passion it will not be permitted to stand.     Lang v. Moore, 107 Mo. 334, 17 S. W. 810; Caruth v. Richardson, 96 Mo. 186, 9 S. W. 633; Avery v. Fitzgerald, 94 Mo. 207, 7 S. W. 6; Garrett v. Greenwell, 92 Mo. 120, 4 S. W. 441; Spohn v. Railroad, 87 Mo. 74; Whitsett v. Ransom, 79 Mo. 258.     The statement by Winn that he had consulted no physician within seven years except that on the first of the month (June) he was sick a day or two and had Dr. Connell to see him, was false, incomplete and untrue and the answer having been warranted to be full, complete, and literally true there was a breach of warranty relieving the defendant from liability, without regard for the character of the ailment for which he consulted or was treated by the physicians, doctors

Gaines, Williams and Connell.    McDermott v. Modern
Woodmen, 97 Mo. App. 636; Modern Woodmen v. An-
gle, 127 Mo. App. 94, 104 S. W. 297; Aloe v. Mutual
Reserve Life Assn., 147 Mo. 561; Bacon on Benefit So-
cieties (3 Ed.), sec. 230a; Insurance Co. v. McTague,
49 N. J. Law 587, 9 Atl. 766.    The admission by Winn
in his application to the Ancient Order of United Work-
men that he had been sick for two weeks in May was
competent evidence against the plaintiff, this being a
suit on a contract between the member and a fraternal
beneficiary society.    Niblack on Benefit Societies (2
Ed.), sec. 325; Bacon on Benefit Societies, secs. 289,
460; Hanson v. Supreme Lodge, K. of H., 140 Ill. 301,
29 N. E. 1121; Thomas v. Grand Lodge, A. O. U. W.,
12 Wash. 500, 41 Pac. 882; Supreme Council v. O'Con-
nell, 32 S. E. (Ga.) 946; Smith v. National Benefit
Assn., 51 Hun 575, 25 N. E. 197; Taylor v. Grand Lodge
A. O. U. W., 111 N. W. 919; Elliott on Evidence, sec.
220.

*J. H. Whitecotton, A. T. Stuart* and *D. M. Proctor*
for respondent.

STATEMENT.—Plaintiff was the beneficiary in a cer-
tificate of fraternal insurance issued by defendant to
James Thomas Winn, June 30, 1906.    The insured died
August 26, 1906.    The defenses were denial of the aver-
ments of the petition, a plea in bar of certain warran-
ties in the application of the deceased for insurance
which turned out to be untrue, and a further plea that
plaintiff committed suicide and therefore defendant was
not liable.    The last defense was abandoned at the trial.
In his application certain interrogatories were pro-
pounded to the deceased, which, with his answers to
them, were in substance as follows:
"14a.    Have you, within the last seven years, been
treated by or consulted any person, physician or physi-
cians in regard to personal ailment?    Yes.

"b.   If so, give dates, ailments, duration of attacks, and name and address of each and all persons or physicians consulted or by whom treated.   First of this month I was sick a day or two and had Dr. Connell to see me, Sturgeon, Mo.

"c.   Was recovery complete?   Yes.

"17c.   Are you now of sound body, mind and health and free from disease or injury, of good moral character and exemplary habits?   Yes.

"33a.   Have you ever had any disease of the following named organs, or any of the following named diseases or symptoms?   . . .   Dyspepsia.   No.

"33a.   Have you ever had any diseases of the following named organs or any of the following named diseases?   . . .   Pleurisy?   No."

The answer of defendant says all the foregoing answers of the deceased were false; i. e., were not full and complete and literally and exactly true, as the application, which was part of the contract of insurance, warranted they should be.   Another defense interposed was that the deceased was not in good health at the time of the delivery of the benefit certificate, and by reason of said fact the certificate never took effect; but was null and void under one of defendant's by-laws, which provided the liability of the society for payment of benefits on the death of a member should not begin until, among other things, the benefit certificate had been delivered to the member "while in good health."   The court refused to instruct the jury at defendant's request, that plaintiff could not recover unless the jury found from the weight of the evidence the claim in suit under the benefit certificate "was passed upon by the board of directors of the defendant society before the commencement of this action."   Said request was based on the following section of the by-laws:

"Sec. 168.   *Death Claims.*   The board of directors shall pass upon all death claims upon deceased beneficial members made in accordance with the laws and

rules of the society in such case made and provided, and shall order payment thereof from the benefit fund whenever such claims are just and a proper charge against the society."

Certain physicians gave testimony tending to prove they had treated the deceased for personal ailments and he had consulted them within seven years next before June 25, 1906. These witnesses were Dr. J. W. Williams, Dr. J. T. Gaines, and Dr. W. S. Connell. Concerning this testimony the court gave stringent instructions to the effect that if the jury found either of said doctors prior to June 25, 1906, the date of the application for insurance, and within seven years next before said date had treated the insured for a personal ailment, or he had consulted said doctors or either of them regarding a personal ailment, the verdict should be for defendant; further, that so far as the defense on the warranties was concerned, it was immaterial whether the personal ailment for which the doctors treated deceased, or about which he had consulted them, was serious, not serious or only temporary. As regards treatment by Dr. Connell, the insured stated in his application said physician had treated him at Sturgeon, Missouri, the first of the month in which he had made the application. The court instructed regarding this matter, that if the jury found said Dr. Connell had treated deceased for a personal ailment at any time within seven years of June 25, 1906, or the deceased had consulted said doctor within said time for any personal ailment, and such treatment or consultation was at a different time from the one mentioned in the application, the verdict should be for defendant. No instructions were given at the request of plaintiff, and none requested by defendant were refused, except a peremptory one for a verdict in its favor, and the one above copied, ordering a verdict for defendant if plaintiff's application had not been passed on by defendant's board of directors be-

fore this action was instituted.    A verdict was found
for plaintiff for $3,000, the amount of the benefit certifi-
cate, and defendant appealed.

GOODE, J. (after stating the facts).—The main
contention for defendant is alleged disregard of the in-
structions and the evidence by the jury, it being as-
serted the verdict is contrary to both and must have
been the result of prejudice or passion.    The evidence
said to be uniform against plaintiff's recovery is that
touching the truth of the answer to the fourteenth, sev-
enteenth and thirty-third interrogatories; especially the
answer to the fourteenth which asked the insured wheth-
er he had, within the last seven years, consulted any
person or physician in regard to personal ailments, tell-
ing him if he had, to give the dates.    The answer was
in the affirmative, and the insured named the first of
June, the month in which the application was made,
saying he had been ill a day or two and had called in
Dr. Connell to see him.    The application was made June
25th, and therefore the answer said he had consulted a
physician the first of June and had been ill a few days.
This statement was true as far as it went, but defendant
contends it was not the whole truth, but in fact the in-
sured had been treated by Dr. Connell at various times
during the spring of the year and through the month
of June to the date of the application, and had pre-
viously been treated by Dr. Gaines for lumbago and by
Dr. Williams some eighteen months before for bilious-
ness.    It is further contended he had chronic stomach
trouble and indigestion during several months before
his death, and therefore was not in good health, and
that he had been afflicted with pleurisy.    Deceased con-
ducted a store at a place known as The Pinnacles, in
which, according to Dr. Connell, drugs were kept.    Said
doctor testified that at times prior to June 1, 1906, he
had advised the deceased what drugs to take when de-
ceased would complain; mainly of suffering due to at-

tacks of indigestion not of a serious nature; that he had treated deceased about May first for pleurisy due to a cold; that after the first day of June and beginning with the third, he treated him several times during the month and prior to the date of the application, thence onward through July and August until he died. The witness said he never gave deceased a prescription and testified that to the best of his knowledge, the answer of deceased to the inquiry whether he had consulted physicians was true. One witness who was about Winn's store during the time of the supposed treatments by Dr. Connell, gave testimony which indicates that whatever passed between deceased and Dr. Connell in regard to illnesses experienced by the former were of a casual nature; that by way of friendly greeting when they met in the morning, the doctor would inquire how deceased felt, etc. From this testimony it might be inferred the supposed treatments were not upon consultations with the deceased, or anything more than casual remarks of the physician regarding his health or what to do for it. [Harris v. Knights & Ladies of Honor, 129 Mo. App. 163; Assn. v. Ogletree, 77 Miss. 7.] As to the deceased having had pleurisy in 1906, the testimony is contradictory. Some witnesses said he wrenched his back while handling mules and was caused to suffer some pain, but had no attack of pleurisy. As regards electrical treatment for lumbago by Dr. Gaines, witnesses gave testimony that the doctor had a static electrical machine, and as it was a novelty, people of the vicinity were curious about it and tried what effect it would have on them; in other words, for amusement, curiosity and to test the machine, they submitted to shocks, and that this was the only treatment of the kind deceased had. As against the testimony of the physicians, various persons, including deceased's father-in-law, his wife and a brother-in-law, testified he was in excellent health, never complained of illness, except around the first of June, as stated in the application, and never

was treated by physicians. The testimony to this effect is extremely strong and justified the jury in finding deceased had not been treated and the physicians were mistaken about the facts or the dates. The examining physician for defendant examined deceased when the latter applied to be insured, and passed him as an excellent risk, giving favorable answers to minute inquiries. This physician also testified on the stand that when he made the examination less than two months before the insured died, there was no evidence of any disease. Winn's death was sudden, and appears to have been caused by heart failure. There had been a family dinner party, and after dinner deceased tried in a playful way, to take an apple from a girl or young woman of the company. A slight struggle took place over the apple and afterward deceased sat down in a rocking chair, attempted to pull the chair forward, complained of a smothering sensation, and was soon dead. The doctor thought he died from overeating, thereby causing indigestion and an extension of the stomach which interfered with the heart's action. One bit of evidence is much insisted on as conclusive for defendant: On June 26, 1906, deceased applied for admission into the Ancient Order of United Workmen. In his application he was asked and answered as follows:

"Have you ever been obliged to consult a doctor or lose any time from your usual occupation on account of sickness at any time during the last five years? Two weeks, malarial fever."

It will be observed the answer did not say he had consulted a physician, but that he had had malarial fever, and does not squarely contradict his answer in the application to defendant, that he had not consulted a physician save on June first. The answer was a mistake, for the evidence in the present record conclusively proves deceased did not have malarial fever. Hence we cannot say plaintiff is prevented from recovering on

the ground said answer in the application to the Ancient Order of United Workmen demonstrates the answers in the present case were false. It does nothing of the kind.

Counsel for defendant say the question now presented arises on the same state of facts as did the question in McDermott v. Modern Woodmen, 97 Mo. App. 636. In the case relied on it was conceded, instead of disputed, the answer made by the applicant for insurance regarding treatments and consultations with physicians was untrue, and the question was whether its untruth avoided the policy unless the fact misrepresented contributed to the risk. In the present case not only is the falsity of the answer in dispute, but there is evidence pro and con on the question, and this evidence was submitted to the jury in imperative instructions, requiring them to return a verdict for defendant if they found the insured had consulted a physician, or been treated for an ailment at another time than the time mentioned in the application, whether the ailment was serious, not serious, or only temporary. In view of the harsh character of the defense, the company should be held to strict proof of it, and there was substantial evidence for plaintiff on the issues.

2.   As regards the refusal of the court to grant instruction No. 2 requested by defendant, we hold the ruling was right. At the outset of the trial defendant admitted in open court plaintiff had sent in timely and sufficient proof of the death of the insured as required by defendant's by-laws. This precluded the defense of failure to make proof of loss, and no defense was interposed in the answer on the ground that plaintiff's demand had not been passed on by the board of directors prior to the institution of this action, as provided in the sixth clause of the benefit certificate. The insured died in August, 1906, and the action was begun in September, 1907, or more than a year later, and as the company had refused until then to pay the loss, it ought to

be presumed the board of directors had passed on it, granting for argument's sake proof of their having done so was essential to plaintiff's case.

3.    We are forced to reverse the judgment on account of the reception of incompetent evidence against the protest of defendant.    On cross-examination plaintiff's counsel read to Dr. Connell, a witness for defendant, the interrogatory and answer of the insured in the application about whether, in seven years, he had been treated by or consulted a physician regarding ailments. Also the further interrogatory and answer regarding the dates of ailments, consultations, names and addresses of each and all persons and physicians consulted or by whom the insured had been treated.    After reading those matters to the witness, plaintiff's counsel asked if the answers given by the insured to the questions were true.    An objection that this was not proper cross-examination and called for the conclusion of the witness, was overruled and the witness said the answers of the insured were true to the best of his (witness') knowledge.    The impropriety and the prejudicial effect of this testimony are apparent.    The witness had just testified to treating the deceased at times other than the date mentioned in the application; that is to say, had been testifying to matters which, if true, proved the answers of the insured were untrue; and the further statement that to the best of the witness' knowledge the answers of the insured were true was not evidence regarding the disputed fact, but an expression of the opinion of the witness upon the issue the jury were to determine. Moreover, the question propounded to the witness was misleading; for the latter might have understood it to be whether the answer of the insured that he had been treated by the witness the first of June was true; whereas the issue the jury was trying was whether the answer of the insured was not only true as to said circumstance, but the whole truth—i. e., that

he had not been treated by or consulted the witness or other physicians at any other time.

By way of affecting the credibility of Dr. Connell, plaintiff's counsel asked Dr.. Gaines on cross-examination whether Dr. Connell had been addicted to the use of narcotics. On receiving a negative answer, counsel asked whether at the time Dr. Gaines knew Mr. Connell, the latter was addicted to the use of whisky, the answer being that he drank some. Dr. Gaines was then asked what was the condition of Dr. Connell's health at that time and answered it was very poor. The admission of this and similar testimony was opposed. One witness testified Dr. Connell became intoxicated nearly every day, or whenever he could get whisky, during the year 1906; that he drank all the whisky he could get and used all the drugs. In ruling on the admissibility of this testimony, the court said, in substance, specific acts of intoxication could not be shown to impeach the credibility of Dr. Connell, unless he was proved to have been intoxicated at the time of the events about which he testified; that is to say, on the dates he testified he had given treatments to the insured. We have found authority for this ruling; the competency of such evidence being put on the ground that it assists the jury by throwing light on whether the witness to be impeached was in such a mental condition at the time of the events about which he testified, as to understand them clearly or retain an accurate remembrance of them. [2 Elliott, Evidence, sec. 952; State v. Rollins, 113 N. C. 722, 732; Mace v. Reed, 98 Wis. 440; Willis v. State, 43 Neb. 102, 109; People v. Camp, 139 Mo. 87.] But if we allow the principle of the ruling was sound, we must hold it was inaccurately applied. Dr. Gaines' testimony had no reference to the days on which Mr. Connell had testified he treated Winn, some of which days were proved by a day-book put in evidence. Mr. Gaines merely swore Mr. Connell drank some, and this testimony was not within the rules regarding what is

competent evidence to affect a witness' credibility. The testimony that Dr. Connell got drunk every day when he could get liquor, though a broad statement, was too indefinite in regard to days and hours, to do more than afford the jury a chance to conjecture he was intoxicated at the times he swore he treated Winn. This evidence was highly prejudicial, did not go to Connell's general reputation nor prove he was intoxicated at the times of the events narrated by him, and falls within the rule against proving specific acts of wrongdoing for the purpose of impeaching a witness. [1 Greenleaf, Evidence, sec. 461 b, (2) a.]

Some testimony was received that the general reputation of Dr. Connell "for sobriety and otherwise" was bad. Exceptions were saved to the admission of it, too, but mainly because it related to his habits in 1906 and not when his deposition was given in 1907. That interval was so brief as not to render the testimony incompetent if it was otherwise competent on principle; particularly as Dr. Connell had moved away from the community. [1 Elliott, sec. 279, p. 251, and citations in notes.] The rule in this State allows inquiry for impeaching purposes, not only concerning the general moral character of the witness, but concerning particular traits, like inebriety or unchastity. [State v. Sawyer, 104 Mo. 441, 470 and citations; State v. Sibley, 132 Mo. 102.] The words "and otherwise" ought to be omitted from the question, which should be confined either to the reputation of the witness in respect of drunkenness, or other bad traits, or general moral character.

The judgment is reversed and the cause remanded. All concur.