# CHARLESTON..

## STATE v. FRANK KNOSKY.

Submitted January 18, 1921.　Decided January 25, 1921.

1. INTOXICATING LIQUORS—*State Legislation Enforced Through Additional Offenses and Punishments Created Thereby.*

   The general prohibition law enacted by Congress does not provide an exclusive remedy for the enforcement of the provisions of the eighteenth amendment to the constitution of the United States. By the very terms of that amendment, not only Congress but the several states are given power to enforce its provisions against the sale or manufacture of intoxicating liquor, and any state legislation in aid of that general purpose will be enforced, notwithstanding offenses may be created and punishments provided in addition to those offenses created and punishments prescribed by the general prohibition law enacted by congress. (p. 560).

2. CRIMINAL LAW—*Intoxicating Liquors—State Law Prohibiting Manufacture Held not to Impose Excessive, Cruel, or Unusual Punishment.*

   Section 37 of ch. 108 of the Acts of 1919 does not prescribe punishment out of proportion to the character and degree of the offense therein mentioned, or cruel or unusual punishment, in violation of § 5 of art. 3 of the constitution of this state. (p. 561).

3. INTOXICATING LIQUORS—*Desert, Secluded, Hidden, or Solitary "Place" Held to Refer to Immediate Vicinity Wherein Illicit Still Operated.*

   The language, "any desert, secluded, hidden, secret or solitary place," used in § 37 of ch. 108 of the Acts of 1919 in defining what shall constitute a moonshine still, is not used to indicate the exact apartment or room in which the operations are carried on, but as referring to the immediate vicinity, region or locality in which such still is operated.　(p. 561).

4. SAME—*Operation of Still in Defendant's Own Home in Settled Community Held Not Operation of Moonshine Still.*

   One operating a still for the manufacture of intoxicating liquors upon the stove in the kitchen of his own home, in a settled community close to a public road, is not guilty of operating a moonshine still under the provisions of § ·37 of ch. 108 of the Acts of 1919, but is guilty under § 3 of that Act. (p. 564).

   LYNCH, JUDGE, dissenting.

Appeal from Circuit Court, Hancock County.

Frank Knosky was convicted of having in his possession and operating a moonshine still, and he appeals.

*Reversed and remanded.*

*J. B. Levy* and *E. A. Hart,* for plaintiff in error.

*E. T. England,* Attorney General, *R. A. Blessing,* Assistant Attorney General, and *Jno. T. Simms,* for the State.

RITZ, PRESIDENT:

The defendant was indicted, tried and convicted under the provisions of § 37 of ch. 108 of the Acts of 1919, for having in his possession and operating a moonshine still, and was sentenced to confinement in the penitentiary for a term of two years, and to pay a fine of three hundred dollars.

It appears from the evidence that the sheriff of Hancock county had information that the defendant was engaged in the unlawful manufacture of intoxicating liquors, and with a view of investigating the complaints he, with one or more of his deputies, went to the residence of the defendant. It appears that the defendant resided with his family, consisting of himself, his wife, and four children, in a small house on a farm containing about 140 acres, the house being, according to the witnesses, from three hundred to five hundred feet from the public road which passes the place. The defendant rented this house and farm from the owner who reserved a room in the same for his own use, which was at the time being occupied by him. When the sheriff approached the house from the road he saw two men leaving the same from the opposite side, and when he and his deputies reached the house and entered the kitchen of the same they discovered therein a still, such as is used for the manufacture of spirituous liquors, sitting on the stove in the defendant's kitchen in full operation. They also found a keg of manufactured liquor in an adjoining room and a gallon jug of the same liquor about two-thirds full, as well as a large amount of raisin mash ready to be used in the process of manufacture. The sheriff testified that he made an inspection of the liquor being produced at the time by the still, and found that it is what is popularly called "raisin jack," or "pick handle," or

"white mule," and that it was intoxicating. Upon the trial of the case the defendant introduced no evidence to contradict the testimony of the sheriff which was fully corroborated by one of his deputies who accompanied him. ·

Upon this writ of error the defendant insists that the judgment against him should be reversed, and relies upon three grounds therefor: first, that the adoption of the eighteenth amendment to the Constitution of the United States, and the passage of the federal prohibition law for the enforcement of the same, superceded all state laws having for their purpose the enforcement of prohibition; second, that the punishment provided for the offense inhibited by § 37 of the Act above cited is cruel and unusual, and in violation of the Constitution of this state; and, third, that under the evidence the defendant was not guilty of operating a moonshine still within the meaning of said § 37, but that if he was guilty of anything he was guilty under § 3 of the Act.

The defendant's first contention is without merit. The eighteenth amendment to the federal constitution in terms provides: "The Congress and the several states shall have concurrent power to enforce this article by appropriate legislation." It cannot be denied but that the purpose of the eighteenth amendment was to secure practical prohibition, and it is quite as plain from the language above quoted that the intention was to confer, not only upon the congress, but upon the several states, the power, not only to enforce but to enact such legislation as might tend in that direction. The adoption of this amendment was at least to some extent an innovation on what had been theretofore considered to be within the exclusive jurisdiction of the several states, and no doubt the congress in submitting this amendment believed that the enforcement of the prohibition provided by the amendment could be better secured, in some instances at least, by the action of state authorities. It will be noticed that the language used does not limit the states to the enforcement of such laws as may be passed by congress for the effectuation of the purpose of the constitutional amendment, but confers upon the states power to enforce the amendment by appropriate legislation. This plainly gives to the several states power to adopt such means by way of legislation as will

best meet the obstacles existing in each locality to the enforcement of the law.    The fact that some states may make an offense not included within the general prohibition law enacted by congress can make no difference, so long as the general purpose is kept in view.    There is some discussion of this concurrent power conferred upon the congress and the several states in the case of *Rhode Island* v. *Palmer,* and related cases, decided by the United States Supreme Court, and reported in the Advance Opinions of July 1, 1920.

Nor is there merit in the contention made that the punishment prescribed by § 37 of ch. 108 of the Acts of 1919 is out of proportion to the character and degree of the offense, or is cruel or unusual, and for that reason in violation of the constitution of this state.    The power of the legislature to prescribe the punishment for offenses is very broad, and much must be left to the judgment of that body as to what punishment will be adequate for the purpose of deterring others from the commission of crime, and for the reformation of the offender.    This question is elaborately discussed by Judge BRANNON in the case of *State* v. *Woodward,* 68 W. Va. 66, and by Judge ROBINSON, in the case of *State* v. *Grimm,* 68 W. Va. 248.    Those opinions furnish a sufficient answer to the assignment of error upon this ground.

The third contention made by the defendant is that the evidence does not make him guilty of the offense interdicted by § 37 of the Act.    It appears from an examination of ch. 108 of the Acts of the legislature of 1919, that by § 3 any person who engages in the manufacture of intoxicating liquors (other than by moonshine still) shall be guilty of a misdemeanor for the first offense, and if found guilty of a subsequent offense, of a felony, and punished as provided in that section.    This section by itself does not inhibit the manufacture of intoxicating liquors by moonshine still, and unless there had been other legislation those engaged in such manufacture would not be punishable under the act.    But the exception contained therein was for the purpose of reserving this manufacture by moonshine still for further treatment by the legislative authority, and under § 37 of the Act such manufacture is inhibited, and is made a felony punishable by confinement in the penitentiary for not less than

two nor more than five years, and a fine of not less than three hundred nor more than one thousand dollars. It will thus be seen that the legislature has classified the manufacture of liquors into those produced by moonshine still and those produced otherwise. Section 37 goes further and defines what shall constitute a moonshine still. This provision is: "For the purpose of this act, any mechanism, apparatus or device that is kept or maintained in any desert, secluded, hidden, secret or solitary place, away from the observation of the general public, for the purpose of distilling, making or manufacturing intoxicating liquors, or which by any process of evaporation, separates alcoholic liquor from grain, molasses, fruit or any other fermented substance, or that is capable of any such use, shall be taken and deemed to be a 'moonshine still;' and the owner or operator of any such 'moonshine still' shall be deemed a 'moonshiner.'" It is argued by the learned Attorney General that the proof in this case brings the defendant within the definition of a moonshiner as prescribed by the statute; that his kitchen in his residence is a desert, secluded, secret or solitary place within the meaning of that statute, and that, therefore, the conviction of the defendant under the same was proper. It must be borne in mind in seeking the construction of this section that all manufacture of spirituous liquors is inhibited by the Act, and this being true it could hardly be expected that one engaged in such manufacture would set up a still in the face of the public. This would lead to certain detection, and as certain punishment. Illicit business is carried on, not for the purpose of detection, but ordinarily for the purpose of profit, and can only be reasonably successful by escaping detection, at least for a reasonable time, so that we are justified in the assumption that anyone who engages in the business of manufacturing intoxicating liquors will, to the extent that he is able, secure himself from detection by those charged with the execution of the law. It therefore follows that if this statute is to be construed as making anyone a moonshiner who manufacturers liquor in any place not open to the public gaze, then all persons engaged in this business will fall within the definition, and the legislature would be open to the charge of having done an entirely futile thing in inhibiting the manufacture of liquor other than by moonshine still, for there

would be no offense to fall under that provision of the act. The word "place" used in § 37 has a little broader meaning than the room in which the actual manufacture is being carried on. It means that the house or building itself shall be in a secluded place, the word place being used more in the sense of the immediate neighborhood, region, or vicinity than in the sense of the particular room or apartment in which operations are conducted. We know as matter of fact, and the legislature was not without the same knowledge, that what was ordinarily termed moonshine was such liquors as were manufactured in the fastnesses of the mountains and other secret and hidden places, where there was great difficulty of detecting it, and this was the popular meaning of the term. The language used by the legislature in defining it indicates to our minds that this was the sense in which the legislature intended it should be used. We do not mean to say that one could not be guilty under § 37 unless it was shown that he carried on his operations in the seclusion of the woods or mountains. There may be just as effective means used in centers of urban population. Such a still might be operated in abandoned coal mines, or in abandoned buildings, or means might be taken by the owner or operator to provide a specially hidden place of manufacture, such as by excavating a cave, or in some similar manner, and it may be that all of these things would fall within the definition of a moonshine still. The principal purpose, however, of the legislature undoubtedly was to include that class of cases where the operations are extensively carried on in out-of-the-way places, and in neighborhoods not frequented by the general public, and by people of more or less desperate character, where the officers, in the execution of the law, would likely meet with resistance in bringing the transgressors to justice, such as has often been met with in the past history of the execution of the liquor laws. From the language used we cannot attribute to the legislature the intention to make it a felony punishable as prescribed in § 37 for a man to engage in the manufacture of liquor in his own home without taking any extraordinary means to conceal it. We are forced to this conclusion from the fact that to give the statute any other construction would make meaningless its inhibition against the

manufacture of liquor other than by moonshine still, for if the construction insisted upon by the state is sustained there would be no manufacture except by moonshine still. It may be that all persons who engage in the illicit manufacture of liquors should be severely dealt with, but the legislature has seen fit to divide them into two classes, making one more odious than the other, and it is beyond our province to abolish the distinction thus made. We are persuaded that the evidence in this case, which is uncontradicted, does not prove the guilt of the defendant under § 37, but that he is guilty, if at all, and upon this we of course express no opinion, of the offense interdicted by § 3 of the Act.

It, therefore, follows that the judgment of the circuit court of Hancock county will be reversed, the verdict of the jury set aside, and the cause remanded for a new trial.

*Reversed and remanded.*