# CHARLESTON.

## STATE *v.* BURTON COOK.

Submitted March 21, 1922.   Decided March 28, 1922.

1.  INTOXICATING LIQUORS—*Finding of Apparatus in Garden Held Not to Warrant Presumption That it Was a Moonshine Still.*

    Where parts of an apparatus used for. the distillation of spirituous liquors are found hidden in the weeds of a garden near the owner's residence and at a short distance from and in full view of both a public highway and a publicly traveled private way, and it does not appear where such apparatus has been used for such purpose, it cannot be presumed that such apparatus is a "moonshine still" as defined in sec. 37, chap. 108, Acts, 1919.   (p. 603).

2.  SAME—*"Moonshine Still" Defined.*

    A "moonshine still" within the terms and meaning of that section is any mechanism, apparatus or device kept or maintained in any desert, secluded, hidden, secret or solitary place, away from the observation of the general public, for the purpose of distilling such liquors in such place.   (p. 603). .

3.  SAME—*Whether Apparatus is a Moonshine Still and Owner
    a Moonshiner Depends Upon Where Device is Operated.*

    Whether an apparatus or device used for the purpose of
    distilling intoxicants is a "moonshine still" and the owner
    or operator thereof a "moonshiner" under chap. 108, Acts,
    1919, depends upon the place in which such apparatus or
    device is used and operated. (p. 603).

4.  SAME—*An Open Garden is Not a "Desert, Secluded, Hidden,
    Secret or Solitary Place" Within the Statute Prohibiting
    Moonshine Stills.*

    A garden, within a few feet of a dwelling house with
    cleared fields surrounding it, and in full view of a public road
    and traveled public pass-way, the former within 200 yards
    and the latter within 50 yards, is not a desert, secluded, hid-
    den, secret or solitary place away from the observation of the
    general public, within the meaning of sec. 37, chap. 108, Acts,
    1919, which prohibits the manufacture of spirituous liquors
    by moonshine still. (p. 605).

Error to Circuit Court, Boone County.

Burton Cook was convicted of owning, operating, main-
taining, and having in his possession a moonshine still, and
he brings error.

                            Reversed and remanded.

*Leftwich & Shaffer,* for plaintiff in error.

*E. T. England,* Attorney General and *R. A. Blessing,* As-
sistant Attorney General, for the State.

LIVELY, JUDGE:

Defendant was convicted of owning, operating, maintain-
ing and having in his possession a moonshine still, and, on
May 24, 1921, was sentenced to confinement in the peniten-
tiary for two years; and he prosecutes this writ of error.

Defendant lived on a farm, formerly owned by his father,
lying near the divide between the West Fork and Pond
Fork of Little Coal River. A public road ran about 200
yards from the house along a ridge, from which the house
and farm could be plainly seen. A public pass-way, com-
monly traveled led up to defendant's premises from the
hollow below and passed near the house, between it and an

orchard, and beyond to the ridge road. The land around the house was cleared, the closest woodland being about 75 yards from the house. The land had been cleared and farmed for many years. Early on the morning of September 20, 1920, R. M. Cook, J. W. Jeffrey and Landon White went to defendant's house and secreted themselves nearby. They saw him go into his garden about 30 feet from the house, where he took a drink out of some vessel. Afterwards a boy brought a saddled mule from the barn, and defendant's wife went into the garden and filled a bottle out of a "half-gallon self-sealer", which bottle she handed to defendant, who then mounted the mule and while riding away was arrested by these persons. They found a pop bottle full of apple brandy in his hip pocket. Two of the officers searched the premises and found the half-gallon self-sealer in the garden, with some of the apple brandy in it. A coiled copper pipe in a coffee sack, and two big copper kettles were also found covered with weeds in the garden. The rim had been removed from one of the kettles and there was a small hole in its bottom. There was evidence of dough around the rimless kettle ,and the smell of apples emanated from one of them. The cap piece, which we understand is used to connect the kettle with the coil or worm, was not found. Near the barn were found two barrels, with "mash" in one of them. Just on the outside of the garden was found "cooked apple stuff" poured out along the path. The apparatus was not complete for distilling intoxicants in that it lacked the cap piece and another piece of pipe to extend from the top of the kettle to the "cooling tub." There was some evidence that defendant said the kettles belonged to his wife, and that he, defendant, would not be in the trouble if Cook's brother, a mail carrier, had not brought the worm up from Madison. A boy, Clyde Peters, testified that some time previous to defendant's arrest he went to his home for seed corn and saw him in an outbuilding where there was a brass or copper kettle over a fire. He saw the fire and kettle through the cracks in the out-house, but did not go in, and could not say what was in the kettle. The kettle had nothing over the top, and he smelled nothing. The out-house was about

100 feet from the dwelling and just below the orchard and in the wood yard on the opposite side of the dwelling house from the garden. On this evidence defendant was convicted of owning, operating, maintaining, having in his possession, and having an interest in, a "moonshine still."

The court gave two instructions for the State, refused those offered by defendant, and after argument the jury returned the following verdict: "We, the jury, find the defendant guilty of owning and maintaining an apparatus for making intoxicating liquor." The judge informed the jury that their verdict was not responsive to the issue, and instructed them that under the law the operating of an ordinary still was a different offense from that of owning, operating, maintaining, or having in possession, or having an interest in, an apparatus for the manufacturing of intoxicating liquors, commonly known as a "moonshine still," and directed them to return to their room and find a verdict as to whether or not the defendant owned, operated, etc., a moonshine still, to which the defendant objected and excepted. After the jury retired, they were again brought into the court room, when the court gave the defendant's instruction No. 3, with modification. The jury again retired and sometime afterwards brought in this verdict: "We, the jurors, find the defendant guilty as charged in the indictment." Defendant's motion to set aside the verdict and grant a new trial was overruled.

It is insisted that the evidence is not sufficient to sustain the verdict of operating, owning, etc., a moonshine still, and that the court improperly instructed the jury.

It will be seen by inspection of secs. 3 and 37 of Chap. 108, Acts, 1919, that there are different punishments for one who engages in the manufacture of intoxicants, depending upon whether he manufactures by moonshine still or otherwise. The former is punishable as for a felony, under section 37, the latter as a misdemeanor under section 3. This was pointed out in *State* v. *Knosky,* 87 W. Va. 558. Section 37 defines a moonshine still as one that is "kept or maintained in any desert, secluded, hidden, secret or solitary place, away from the observation of the general public, for

the purpose of distilling" etc.    The place where the pro-
cess of manufacturing is carried on is a most potential fac-
tor in determining the degree of the crime.    If in a desert,
secluded, hidden, secret or solitary place, away from the
observation of the general public, then it is a felony.    Else-
where, it is a misdemeanor.    The character    or    kind of
mechanism or apparatus does not fix the degree of crime.
The two copper kettles and worm, if set up and operated in
defendant's front yard, orchard òr kitchen, would not be
a moonshine still, within the meaning of section 37; whereas,
if they were set up and operated in the fastnesses of some
secret mountain cove, or in a secret cave, or any desert,
secluded, secret or solitary place, they would constitute a
moonshine still, and the    operator    or owner would be a
"moonshiner."    The    distinction    is    illustrated    in    the
Knosky case.    Knosky had a still on his kitchen stove    in
full operation when the officers came and made the arrest.
If the same still had been put in operation by him in some
secret or desolate place, and found by the officers, his crime
would have been felonious.

Viewing the uncontradicted evidence in the case under
consideration, is it possible for court or jury to designate
with the slightest degree of certainty the spot where de-
fendant operated the apparatus found in the garden?    Pos-
sibly the cooked "apple stuff" found in the path just outside
the garden might indicate the near presence of the opera-
tion; possibly it was carried on in the dwelling, the kitchen,
or in the out-house, through the crack of which Clyde Peters
saw a copper kettle with a fire under it, and defendant stand-
ing nearby.    If the place where the apparatus was found
is the place where it was operated, it could not be seriously
contended that it was in a secret, secluded or hidden place.
The garden house and out-houses were in full view of the
ridge road as well as in  full view of the public pass-way lead-
ing between the dwelling and the orchard.    The necessary
element of the felony charge in the indictment, namely the
operation of the apparatus in a secret place, is not proven be-
yond a reasonable doubt.    On the contrary, it is very doubt-
fully shown, if at all.    The finding of the apple brandy in

the self-sealer, the discovery of the worm and kettles in the weeds in the garden, and the intimate connection of defendant therewith, without satisfactory explanation on his part, is reasonably conclusive of the fact of his possession and control of the apparatus and the illicit distilling of the liquor by him.    But it does not establish that the apparatus is a "moonshine still" within the meaning and definition of said section 37.   It must be remembered that defendant is indicted for feloniously owning, operating, maintaining and having in his possession, and having an interest in a "moonshine still."    As above stated the possession or ownership of apparatus which may be used to manufacture intoxicants, and which may have been so used, is not punishable under sec. 37, unless such apparatus has been so used and operated in a "secret, desert, hidden" etc. place.   It follows that instruction No. 1, which tells the jury that if they believe beyond reasonable doubt that defendant either owned, operated, maintained or had  an interest in an apparatus used or capable of being used in the manufacture of intoxicating liquors, commonly known as a moonshine still or any device of like kind or character, they should find defendant guilty, was erroneous.   Under this instruction if the kettles and worm had been found on defendant's front porch or in his kitchen without satisfactory explanation he would be guilty of a felony.    Instruction No. 2, which tells the jury that if the apparatus was kept by defendant for making intoxicating liquors, or capable of such use, and that the same was in a secluded, hidden, secret or solitary place, away from the observation of the general public, they should find him guilty, is likewise erroneous.    The felony offense charged in section 37 is the keeping or maintaining such apparatus in a secret, secluded, hidden, desert or solitary place for the purpose of making, or capable  of making,  intoxicating liquors in such place.   The undisputed evidence is that the kettles and worm were found in the garden in the weeds within thirty feet of the house and in full view of the ridge road 100 yards away, and in full view from the public passway about 50 yards nearer.   As was said in the Knosky case the word "place" is used more in the sense of the im-

mediate neighborhood, region or vicinity than of the particular room or apartment in which the operations are conducted. "We know as a matter of fact, and the legislature was not without the same knowledge, that what was ordinarily termed moonshine was such liquors as were manufactured in the fastnesses of the mountains and other secret and hidden places where there was great difficulty of detecting it, and this was the popular meaning of the term. The language used by the legisláture in defining it indicates to our mind that this was the sense in which the legislature intended it should be used." Knosky case, supra, p. 563. Can we say that because this apparatus was found in the garden, covered by the weeds, it was to be or had been kept or maintained as a moonshine still within the meaning of the Act? Under the 1921 amendment to section 37 (chap. 115, Acts, 1921) any such appartus that is kept or maintained "in any building, dwelling house or other place, for the purpose of distilling" etc. makes the owner, operator, or possessor or person having any interest therein, liable to conviction for a felony. But defendant was indicted under the Act of 1919, which act we have heretofore construed, and that Act, as we have construed it, governs here.

We do not think the evidence sufficient to sustain the felony charge in the indictment, under section 37, chap. 108, Acts, 1919.

The other point raised by counsel as to the uncertainty of the verdict, that is, whether the jury intended to find defendant guilty of owning, operating, or having an interest in the apparatus, or guilty of having possession of it only, is immaterial, in view of our disposition of the case. Under said section 37, Acts, 1919, the possession only of a moonshine still is a misdemeanor, and may be charged with the greater offense in the same indictment. *State* v. *Tomlin,* 86 W. Va. 300. A joinder of two or more offenses of the same general nature in an indictment does not make it bad for duplicity. *State* v. *Miller,* 89 W. Va. 84. Where a higher offense necessarily includes a lower offense and both are charged in the same indictment, or in the same count in the indictment, a general verdict of guilty as charged in the

indictment is taken to mean that defendant is guilty of the higher offense. *State* v. *McClung,* 35 W. Va. 280; Bishop's New Crim. Proced. (2nd Ed.) Vol. 2, sec. 1331; *Estes* v. *State of Ga.,* 55 Ga. 131; 27 R. C. L. p. 862, sec. 34.

We reverse the judgment, set aside the verdict and award defendant a new trial.

<div align="right">

*Reversed and remanded.*