# STATE *v.* EDWARDS.

(210 Pac. 1079.)

**Intoxicating Liquors—Testimony of One Credible Witness Sufficient to Sustain Conviction of Selling.**

1. In a prosecution for sale of intoxicating liquor, where a state witness testified in support of all material allegations of the indictment, in view of Section 702, Or. L., providing that direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact except usage, perjury, and treason, his testimony was sufficient to sustain a conviction.

**Criminal Law—Courts Judicially Know That Whisky is Intoxicating.**

2. The court judicially knows that "whisky" is an intoxicating liquor.

**Criminal Law—Prefix "Moonshine" as Descriptive of Whisky Does not Affect Common Knowledge That It is Intoxicating Liquor.**

3. Since "moonshine" whisky is liquor smuggled or illicitly distilled, the addition of the prefix "moonshine" as descriptive of whisky, in no way affects common knowledge that whisky is an intoxicating liquor.

**Criminal Law—Where Witness Stated He Purchased "Moonshine" Whisky, It was a Term Known to Mean an Intoxicating Beverage.**

4. In a prosecution for selling intoxicating liquor, where a witness testified that he purchased moonshine whisky, it was a term well understood to mean an intoxicating beverage unlawfully manufactured.

**Intoxicating Liquors—Overruling Motion to Acquit not Error, in View of Evidence.**

5. In a prosecution for selling intoxicating liquor, where there was evidence of the purchase of two bottles of moonhine whisky by a state agent which was partially consumed by witness, defendant and two female companions, which was corroborated by evidence of the two women, in denying a motion to acquit there was no error.

**Witnesses—Witness may be Asked if He was Intoxicated at the Time of Occurrence of Fact Testified to.**

6. On the theory that drunkenness affects the power of discernment, memory, etc., a witness may be asked on cross-examination if he was intoxicated at the time of the occurrence of the fact testified to.

**Witnesses—To Impeach Witness by Contradictory Statements, They must be Material to the Issue.**

7. Sections 863, 864, Or. L., relating to impeachment of witnesses, are declaratory of the common law; hence, to impeach a witness by proof of contradictory statements, they must be material to the issue.

**Witnesses—Prior Statements of Witness Offered to Impeach Him must be Contradictory to His Testimony at Trial.**

8. Prior statements of a witness, offered to impeach him, in order to be admissible, must be contradictory to his testimony at trial.

**Witnesses—Witness cannot be Impeached by Showing Falsity Concerning Collateral Facts.**

9. A witness cannot be impeached by showing the falsity of his testimony concerning facts collateral to the issue.

**Criminal Law—Common Knowledge That Appellation "Spotter" or "Stool-pigeon" is Applied as Term of Reproach by Law Violators to One Who Gathers Evidence.**

10. It is common knowledge that the appellation "spotter" or "stool-pigeon" is often applied as a term of reproach by law violators to one who gathers evidence in bootlegging cases.

**Witnesses—Evidence of Defendant's Inconsistent Declarations, Objected to as Collateral Matters, Held Competent.**

11. In a prosecution for selling intoxicating liquors, where on cross-examination defendant was asked about declarations made after a previous trial on the same charge, questions whether he did not say, "I have violated every law on the statute books except murder, and I have gotten away with it, and I will get away with that," and "that it took a 'stool-pigeon' to catch you," objected to as relating to collateral matters, were competent as measured by the test that, if witness' answer was a matter which the state would be

allowed to put in evidence—if it had such a connection with the issue that the state could put it in evidence—then it was a matter on which the state could contradict witness; the declarations being inconsistent with his testimony at trial.

**Intoxicating Liquors—Where Liquors were Sold, the Time They were Taken Away was Immaterial.**

12. In a prosecution for selling intoxicating liquors, the time when it was taken away from the place of sale was immaterial.

**Witnesses—Not Error to Restrict Cross-examination as to Number of Drinks Prosecuting Witness Took After Purchasing.**

13. In a prosecution for selling intoxicating liquors, it was not error to restrict cross-examination relative to the number of drinks prosecuting witness took after purchasing it.

**Witnesses—Sustaining Objections to Questions as to All Movements of Prosecuting Witness on Night of Purchase not Reversible Error.**

14. In a prosecution for selling intoxicating liquors, where evidence showed that prosecuting witness purchased the whisky while returning to Medford from Crater Lake, it was not error to exclude cross-examination as to the movements of witness and another during all the period they were on their trip to the lake until witness got out of the car at Medford.

**Criminal Law—Defendant not Prejudiced, Where Rebuttal Witness' Only Evidence was in Answer to Preliminary Questions.**

15. Where the only evidence given by a witness called in rebuttal by the state was in answer to preliminary questions, and objections to all other questions were sustained, defendant was not prejudiced.

From Jackson: F. M. CALKINS, Judge.

Department 2.

This case involves an alleged violation of the Prohibition Law (Sections 2224 to 2224—68, Or. L.). The defendant, appealing from a judgment of conviction, complains of the court's denial of a motion to direct a verdict of acquittal, and avers error by reason of the ruling of the court relating to the admission and exclusion of evidence. Likewise, defendant asserts error because of the refusal of the court to give certain requested instructions relating to agency.          AFFIRMED.

For appellant there was a brief and oral argument by *Mr. George M. Roberts.*

For respondent there was a brief and oral argument by *Mr. Rawles Moore,* District Attorney.

BROWN, J.—James Edwards was indicted by the grand jury of Jackson County, Oregon, for the crime of selling intoxicating liquor, the character of which was whisky, and mostly of "moonshine" manufacture. The averred sale was made to one A. B. Gates, the main witness for the prosecution. This man held a commission issued by the Governor of the State of Oregon, as a state agent, and during the months of July and August, 1921, was engaged in investigating violations of the Prohibition Law in Jackson County under the pay of the County Court of that county.

The testimony in chief, upon the part of the state, in substance, was: That on the evening of August 7, 1921, the defendant sold Gates a bottle of "moonshine" whisky. Delivery was made in defendant's automobile, in which Gates was a passenger, and the defendant was the driver thereof. When Gates first saw this particular bottle of whisky, it was in possession of the defendant and it was sold and delivered to Gates in Jackson County while returning to Medford from Crater Lake and Prospect Park. Both Gates and Edwards drank from the contents thereof. After several drinks had been served, the bottle containing what was left of the liquor was taken by Gates to his room. This bottle was later identified, offered and received in evidence in a former trial of this cause, and again admitted in evidence in this trial. The cross-examination developed that on Saturday evening, August 6, 1921, Gates, the investigator, paid Edwards $40 in advance, for which he undertook to supply the investigator with one bottle

of Scotch and two bottles of "moonshine" whisky. Gates testified that he paid $20 for the Scotch and $10 per bottle for the "moonshine." There was other incriminating testimony, in the mature of an admission by the defendant to one S. B. Sandifer, who had general supervision of the enforcement of the Prohibition Law in Jackson County. He gave evidence to the effect that upon the arrest of Edwards he (Sandifer) went to the jail where defendant was confined, and had a conversation with him relating to the charge of bootlegging that had been placed against him on account of the sale made to A. B. Gates, the special agent, and that the defendant said: "Well, by God, you have got me, and you have got me right." There was some testimony concerning a previous sale of a bottle of "moonshine" whisky to the state agent by defendant. At the conclusion of the state's case, the defendant offered a motion to direct a verdict, averring that there was no proof of a sale of intoxicating liquor made by the defendant, and a failure of proof of the intoxicating quality of the liquor, if sold.

1. Gates testified in support of all the material allegations contained in the indictment. Furthermore, the jury had a right to consider as of some value the testimony of Sandifer alluded to above.

The law of this state is that—

"The direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact except usage, perjury, and treason." Section 702, Or. L.

We have seen that the motion makes the point that there is no proof tending to show the intoxicating character of the liquor. The testimony is to the effect that the bottle contained whisky. The witness says he took a number of drinks from the bottle. The

evidence on the part of the state shows that whisky was sold by the defendant to Gates in Jackson County, Oregon, as alleged in the indictment. The prosecuting witness testified that it was "moonshine" whisky, and from the record before us the writer opines that he was well qualified to testify as to the kind and character of the liquor.

The term "whisky" is well defined. In the course of the administration of the Pure Food Act of June 30, 1906 (U. S. Comp. Stats., §§ 8717–8728), it was sought to narrow the meaning thereof. A controversy involving that matter was appealed from the Secretary of Agriculture to President Taft, who, on December 20, 1909, rendered an elaborate and instructive written opinion, which appears in full in 2 Woollen & Thornton on Intoxicating Liquors, pages 1401–1409. Among other things, he said:

"Theoretically pure ethyl alcohol is 200° proof. A proof gallon of distilled spirits is half water and half alcohol, or a gallon of 100° proof. Potable strength varies from 90° to 102° or 103°. * *

"Whisky for more than 100 years has been the most general and comprehensive term applied to liquor distilled from grain. It is derived from the Irish word 'uskuebaugh,' and for more than a century has been used in Ireland, Scotland, England and in this country to mean ardent spirits distilled from grain reduced to potable strength. Its flavor and color have varied with the changes in the process of its manufacture in the United States, Ireland, Scotland and England, and have been varied by the introduction into it of fruit juice and burnt sugar and other substances. It was manufactured originally in what was called a 'pot still' by the distillation of wort or beer fermented from grain."

After describing processes of making and finishing the liquor, the opinion states:

"All these products, straight whisky, rectified spirits whisky, redistilled spirits whisky, and neutral spirits whisky, when reduced by water to 100° proof or less and sold upon the markets as beverages, were known to the trade and customers as whiskies. * *

"It is undoubtedly true that the liquor trade has been disgracefully full of frauds upon the public by false labels; but these frauds did not consist in palming off something which was not whisky as whisky, but in palming one kind of whisky as another and better kind of whisky. * * "

2. That whisky is an intoxicating liquor the court judicially knows: *State* v. *Carmody,* 50 Or. 1 (91 Pac. 446, 1081, 12 L. R. A. (N. S.) 828); Black on Intoxicating Liquors, § 12; Joyce on Intoxicating Liquors, § 34; Chamberlayne on Modern Law of Evidence, § 711.

From 1 Woollen & Thornton on The Law of Intoxicating Liquor, Section 27, we quote:

"Every person of common intelligence knows that whisky is an intoxicating liquor, and the courts will take judicial notice of that fact."

3, 4. The addition of the prefix "moonshine," as descriptive of whisky, in no way affects the common knowledge that whisky is an intoxicating liquor. "Moonshine" whisky is liquor smuggled or illicitly distilled: Webster's International Dictionary. See, also, Funk & Wagnall's Standard Dictionary. It has been defined as "smuggled spirits; so called as being brought in or taken away at night (Prov. Eng. & Southern U. S.)." Century Dictionary. The word "moonshine" is used in the Prohibition Law of West Virginia (Laws 1919, Chap. 108). The Supreme Court of that state, in *State* v. *Knosky,* 87 W. Va. 558, 563 (106 S. E. 642, 644), said:

"We know as matter of fact and the legislature was not without the same knowledge, that what was ordi-

narily termed moonshine was such liquors as were manufactured in the fastnesses of the mountains and other secret and hidden places, where there was great difficulty of detecting it, and this was the popular meaning of the term.''

Locally, sometimes, such liquor is popularly called in the community, as testified in the Knosky case by the sheriff, ''raisin jack,'' ''pick-handle,'' or ''white mule.'' However, it is a spirituous liquor, and is generally called ''moonshine.'' When the witness testified in the instant case that he purchased ''moonshine'' whisky, it was a term well understood to mean an intoxicating beverage unlawfully manufactured. The motion to direct a verdict of not guilty was properly denied.

5. A motion to acquit was also made at the conclusion of all the evidence. That there was much whisky in defendant's automobile there is no doubt. The defendant's case, as disclosed by the record, is to the effect that two bottles of ''moonshine'' whisky had been procured by Gates at Medford on Saturday night, August 6, 1921, from one Joe Kidd; that the defendant drove the car to the place where Kidd made the delivery; that Gates hired the defendant to take him to a dance at Prospect Park and on to Crater Lake, situate some 80 miles from Medford; that they were accompanied by two women; that Gates paid Edwards $50 for making the trip; that he likewise supplied the party with three bottles of whisky, two of which were the ''moonshine'' whisky purchased by Gates from Kidd, the third being a bottle of Scotch whisky that Gates had brought along; that the occupants of the car, and especially Gates, in the following 24 hours, consumed this liquor, other than a part of a bottle of ''moonshine.'' Thus it will be seen, according to the defendant's own testimony,

that he, in violation of law, knowingly transported upon a public highway, to a dance, a hilarious party, accompanied by much liquor. There was no error in the order of the court, overruling defendant's second motion to acquit. While the two women gave testimony corroborating the evidence of Edwards, the defendant, it was the special province of the jury to determine the weight thereof. They found that the whisky was sold by defendant to Gates.

6. Error is alleged because of the court's sustaining an objection to a question relating to the intoxication of Gates at Crater Lake, a distance of some 80 miles from the scene of the offense and separated some hours in time therefrom. On the theory that drunkenness affects the power of discernment, memory, accuracy and means of knowledge, a witness may be asked on cross-examination if he was intoxicated at the time of the occurrence of the fact testified to. There is an unbroken line of adjudications, holding that parties in the trial of a cause are at liberty to impeach the testimony of a witness by showing that he was drunk at the time of the events about which he testifies: *Mace* v. *Reed,* 89 Wis. 440 (62 N. W. 186); *Pollock* v. *State,* 136 Wis. 136 (116 N. W. 851); *State* v. *Rollins,* 113 N. C. 722 (18 S. E. 394); *Commonwealth* v. *Storti,* 177 Mass. 339 (58 N. E. 1021); *Schneider* v. *Great Northern R. Co.,* 47 Wash. 45 (91 Pac. 565); 40 Cyc. 2574; 28 R. C. L. 618. The right to impeach the testimony of a witness by cross-examination is grounded upon the principle that it is always proper on cross-examination to elicit from the witness—

"all facts tending to show his means of obtaining a correct and accurate knowledge of the facts to which he bears testimony, the manner in which he has used these means, his powers of discernment, memory, and

description.'' *Morris* v. *State* (Ala. Sup.), 39 South. 611.

However, the right to impeach a witness by showing intoxication is restricted to the time of the occurrence to which his testimony relates: *Winn* v. *Modern Woodmen of America,* 138 Mo. App. 701 (119 S. W. 539); 28 R. C. L. 619.

On cross-examination the defendant was asked about a statement made to his friends, which involved a declaration tending to show guilt. The prosecution, after calling the defendant's attention to the time and place and persons present, and also to the fact that the subject matter of the conversation was his former trial upon the identical charge contained in the indictment, asked defendant if he did not say in that conversation:

''I have violated every law on the statute books except murder, and I have gotten away with it, and I will get away with that'';

and, furthermore, ''that it took a 'stool-pigeon' to catch you.'' The question is not well framed. It was objected to as incompetent, irrelevant and immaterial, and not a proper impeaching question.

A defendant upon trial is compelled to meet the crime charged in the indictment, and no other. He is to be tried, not for violating other laws ''on the statute books,'' but for his offending against the law as charged against him in the accusation made by the grand jury. This question contains prejudicial matter, and the overruling of the objection thereto should reverse this case, unless the record discloses its competency.

7, 8. Sections 863, 864, Or. L., relating to the impeachment of witnesses, are merely declaratory of the common law upon that subject: *State* v. *Hunsaker,*

16 Or. 499 (19 Pac. 605). To impeach a witness by proof of contradictory statements, they must be material to the issue: *Burney* v. *Torrey,* 100 Ala. 157 (14 South. 685, 46 Am. St. Rep. 33); *Commonwealth* v. *Jones,* 155 Mass. 170 (29 N. E. 467), and the prior statements, in order to be admissible, must be contradictory to the testimony of the witness given at the trial: *People* v. *Collum,* 122 Cal. 186 (54 Pac. 589); *State* v. *Fogerty,* 105 Iowa, 32 (74 N. W. 754).

9. It is argued in the brief that it is sought to impeach the defendant upon a collateral matter. The rule in this state is that a witness cannot be impeached by showing the falsity of his testimony concerning facts collateral to the issue: *Goodall* v. *State,* 1 Or. 334 (80 Am. Dec. 396); *Williams* v. *Culver,* 39 Or. 337 (64 Pac. 763). To like effect are *Combs* v. *Winchester,* 39 N. H. 13 (75 Am. Dec. 203); *State* v. *Summer,* 55 S. C. 32 (32 S. E. 771, 74 Am. St. Rep. 707); *Pullen* v. *Pullen,* 43 N. J. Eq. 136 (6 Atl. 887). The question arises: "What are collateral matters?" In the case of *Combs* v. *Winchester, supra,* it is said, in determining whether a question is collateral to the issue:

"The test whether the matter is collateral or not is this: If the answer of the witness is a matter which you would be allowed on your part to prove in evidence; if it had such a connection with the issue that you would be allowed to give it in evidence, then it is a matter on which you may contradict him."

The case of *Saunders* v. *City etc. R. Co.,* 99 Tenn. 130 (41 S. W. 1031), sets down the following approved test:

"Would the cross-examining party be entitled to prove the fact as a part of, and as tending to establish, his case? If he would be allowed to do so, the matter is not collateral; but, if he would not be al-

lowed to do so, it is collateral. Collateral matters, in this sense, are such as 'afford no reasonable inference as to the principal matter in dispute.' "

These tests would not apply to the impeachment of a witness by showing that he has been convicted of a crime or is biased, but are fit tests in the instant case.

10, 11. Now, recurring to the impeaching questions put to the witness: It is common knowledge that the appellation "spotter," or "stool-pigeon," is often applied as a term of reproach by a violator of the law to the man who gathers evidence in a bootlegging case. In fact, the defendant in his brief, at page 14, designates Gates as a "spotter" and a "stool-pigeon." At the time that he made the declaration, he knew that the prosecution was based upon the testimony of Gates, whom he terms "stool-pigeon." In his conversation about his case, he declared it took a "stool-pigeon" to catch him. The jury had a right to find that he meant Gates. It would have been competent to prove his statement in the state's case in chief, as a declaration against interest. However, the prosecution chose to bring the matter out on cross-examination. As measured by the test applied to collateral matters hereinbefore referred to, no error was committed. The second impeaching question is like the first, and is coupled with it. These declarations are inconsistent with the defendant's testimony given at the trial, and the impeaching questions put to the witness involving them were competent. The court should have instructed the jury as to the limitation to be placed upon such impeaching matter, but there is no question before us concerning the absence of such instruction.

12. Defendant says that the court should have permitted him to show at what time the whisky was

taken from Medford. The question before the court was:

"Has intoxicating liquor been sold, as charged, and, if so, when, where, and to whom?"

The time when it was taken from Medford was an immaterial matter.

13, 14. It was not error for the court to restrict the cross-examination relative to the number of drinks Gates took after purchasing the liquor. Nor do we deem it reversible error on the part of the court in sustaining objections upon cross-examination relating to the movements of Gates and Edwards during all the period from Saturday night while on their trip to Crater Lake until Gates got out of the car at the Hotel Medford. While we believe the state was inclined to be technical in interposing some of its objections, the court did not abuse its discretion in sustaining them. There was no error in the refusal of the court to give the requested instructions. The defendant's theory was not that he acted as the agent of the prosecuting witness in the purchase of the liquor. He denies having anything to do with the sale or purchase thereof. Notwithstanding this, the court did give an instruction as favorable to the defendant as any of the testimony of the record warrants. He advised the jury that—

"The defendant cannot be convicted of a crime with which he is charged [the sale of intoxicating liquor] if he was acting as the agent for the purchaser. If he was acting on his own behalf and did make the sale which is charged here, then he should be convicted."

The defendant asserts error because the court overruled his objection to the admission of the exhibits in the cause. The ruling of the court was not erroneous,

for the objection went to the weight, rather than to the competency, of the evidence identifying the liquor.

15. It is claimed that defendant was prejudiced because of the testimony of one Hozy Drew, who was called in rebuttal by the state. The only evidence given by this witness was in answer to preliminary questions. Questions not of this character were objected to, and the objections thereto sustained by the court.

We have considered all assignments of error, and decide that this case should be affirmed. It is so ordered.

BURNETT, C. J., and BEAN and McCOURT, JJ., concur.